TYSON, Judge.
 

 *120
 
 I.
 
 Background
 

 Robert Lee Walker ("Decedent") was killed in a motor vehicle accident while driving a truck owned by K&W Cafeterias, Inc. ("Employer") in South Carolina on 16 May 2012. Decedent was a resident of South Carolina. Employer is a North Carolina corporation and headquartered in Winston-Salem. Employer's vehicle Decedent was driving when the accident occurred was insured under an automobile liability policy underwritten by Liberty Mutual Insurance Company ("Insurer") (Employer and Insurer collectively referred to as "Defendants"). The automobile liability policy was purchased and entered into within North Carolina.
 

 On 21 August 2012, Decedent's widow, Gwendolyn Walker ("Plaintiff"), filed a claim for death benefits pursuant to the North Carolina Workers' Compensation Act.
 
 N.C. Gen. Stat. § 97-38
 
 (2017). With the consent of the parties, the Industrial Commission entered an opinion and award, which included several joint stipulations, including, in relevant part:
 

 1. ... [Decedent] died as the result of a motor vehicle accident arising out of and in the course of his employment with Defendant-Employer.
 

 2. At all relevant times, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
 

 ...
 

 6. The North Carolina Industrial Commission has jurisdiction over the parties and the subject matter involved in this case.
 

 ...
 

 *121
 
 8. On the date of [Decedent's] death, [Decedent] had six children. However, all children
 
 *897
 
 were over the age of eighteen on the date of [Decedent's] death. ...
 

 11. Plaintiff Gwendolyn Dianette Walker is the widow and sole surviving dependent of [Decedent].
 

 Based upon the parties' stipulations, and with the consent of the parties, the Industrial Commission ordered Defendants to pay Plaintiff five hundred weekly payments of $650.89 each and an additional payment of $8,318 for funeral expenses, for total anticipated benefits of $333,763.
 

 Plaintiff was appointed the personal representative of Decedent's estate in South Carolina. On 26 August 2014, Plaintiff, as personal representative of the estate, filed a wrongful death and survival action against the at-fault driver and his father in the Horry County Court of Common Pleas in South Carolina. In March 2016, Plaintiff, the at-fault driver and his father settled the lawsuit and Plaintiff received a total of $962,500 under the settlement ("the third-party settlement"). The total settlement amount of $962,500 came from the following sources:
 

 1. $50,000 in liability benefits from the at-fault driver's insurer;
 

 2. $12,500 in personal underinsured motorist ("UIM") coverage covering Plaintiff and Decedent's own personal vehicle from Plaintiff's own automobile insurance carrier; and
 

 3. $900,000 in commercial UIM coverage covering the vehicle Decedent was driving when the accident occurred from Employer's automobile insurance carrier, Insurer.
 

 On 21 March 2016, Defendants filed a Form 33 request for hearing with the North Carolina Industrial Commission seeking a subrogation lien against $333,763 of the $962,500 Plaintiff had received from the third-party settlement. On 30 March 2016, Plaintiff filed a declaratory judgment action in the Horry County Court of Common Pleas in South Carolina seeking a declaration of "whether the Defendants are entitled to assert a claim against any and all settlement proceeds, including those settlement proceeds paid under the [underinsured motorist] coverage."
 

 Defendants removed Plaintiff's declaratory judgment action to the United States District Court for the District of South Carolina based upon the diversity of state citizenship of the parties on 2 May 2016. On 13 June 2016, Plaintiff filed a motion with the North Carolina Industrial
 
 *122
 
 Commission to stay the proceedings, pending the outcome of the declaratory judgment action in the United States District Court. The Industrial Commission denied Plaintiff's motion to stay the proceedings by an order filed 28 June 2016.
 

 On 28 July 2016, Plaintiff filed an appeal for a hearing before a deputy commissioner. Before the scheduled hearing, "the parties jointly requested that in lieu of testimony, they be allowed to try the case on stipulated facts and exhibits with the submission of briefs and proposed decisions[.]" Plaintiff argued South Carolina law controlled over North Carolina law to the extent South Carolina forbids subrogation of UIM proceeds for workers' compensation benefits under S.C. Code § 38-77-160.
 

 On 10 July 2017, the deputy commissioner filed an opinion and award ruling in favor of Defendants and requiring Plaintiff to apply the $962,500 from the third-party settlement to satisfy Defendants' $333,763 subrogation lien. Plaintiff appealed the deputy commissioner's opinion and award to the full Industrial Commission ("the Full Commission").
 

 On 26 January 2018, while Plaintiff's appeal to the Full Commission was pending, the United States District Court entered an order holding it "will abstain from exercising jurisdiction over [Plaintiff's] declaratory action, and will dismiss it without prejudice to the parties pursuing their claims before the Industrial Commission and the North Carolina appellate courts."
 

 On 27 February 2018, the Full Commission issued an opinion and award. The Full Commission found, in relevant part:
 

 3. ... Decedent was killed when his vehicle was struck by another vehicle operated
 
 *898
 
 by ... "third parties," as defined in ...
 
 N.C. Gen. Stat. § 97-10.2
 
 (a).
 

 ...
 

 12. Under the terms of the Consent Opinion and Award, Plaintiff and Defendants stipulated to the Industrial Commission's jurisdiction over Plaintiff's workers' compensation claim. Furthermore,
 
 N.C. Gen. Stat. §§ 97-91
 
 and 97-10.2 confer[ ] the Industrial Commission with personal jurisdiction over Plaintiff and subject matter jurisdiction over all aspects of the workers' compensation claim, including Defendant's lien.
 

 ...
 

 *123
 
 14. Plaintiff conceded in her brief to the Deputy Commissioner that the distribution formula in
 
 N.C. Gen. Stat. § 97-10.2
 
 (f) would apply to the $50,000.00 in liability insurance proceeds.
 

 15. Plaintiff's $900,000.00 in commercial UIM proceeds were paid pursuant to a North Carolina liability policy. While the policy contains a South Carolina endorsement (as well as endorsements or financial responsibility identification cards for Florida, West Virginia, and Virginia), the UIM policy was made in North Carolina, was paid pursuant to the provisions of a North Carolina policy, and is subject to the laws of this State.
 

 The Full Commission concluded Defendants were entitled to a subrogation lien on the entire third-party settlement proceeds "and not just [Plaintiff's] share of the Third-Party Recovery." The Full Commission's opinion and award directed the distribution of the third-party settlement amount of $962,500 as follows:
 

 a. The sum of $5,921.91 shall be paid to Plaintiff's counsel for payment of actual costs pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (f)(1)(a) ;
 

 b. The sum of $320,833.33 shall be paid to Plaintiff's counsel for payment of attorney's fees pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (f)(1)(b) ;
 

 c. The sum of $222,507.63 shall be paid to Defendants pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (f)(1)(c) and (f)(2) ; and
 

 d. The remaining sum of $413,237.13 shall be paid to Plaintiff pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (f)(1)(d).
 

 Plaintiff filed timely notice of appeal to this Court.
 

 II.
 
 Jurisdiction
 

 Jurisdiction lies in this Court pursuant to
 
 N.C. Gen. Stat. § 97-86
 
 (2017).
 

 III.
 
 Issues
 

 Plaintiff argues: (1) the Full Commission exceeded its subject matter jurisdiction by ordering the distribution of out-of-state UIM proceeds to satisfy a workers' compensation lien, when the proceeds were shares of an out-of-state wrongful death recovery for some recipients who
 
 *124
 
 never received workers' compensation benefits under North Carolina law; (2) the UIM insurance proceeds were paid under South Carolina insurance policies; and (3) S.C. Code. § 38-77-160 immunizes the South Carolina UIM proceeds from all subrogation.
 

 IV.
 
 Standard of Review
 

 An opinion and award from the Industrial Commission is reviewed to determine:
 

 (1) whether its findings of fact are supported by any competent evidence in the record; and (2) whether the Industrial Commission's findings of fact justify its legal conclusions. The Industrial Commission's conclusions of law are reviewable de novo by this Court.
 

 Moore v. City of Raleigh
 
 ,
 
 135 N.C. App. 332
 
 , 334,
 
 520 S.E.2d 133
 
 , 136 (1999) (citation and quotation marks omitted).
 

 "Whether North Carolina law or South Carolina law governs is a question of law which we review
 
 de novo
 
 ."
 
 Anglin v. Dunbar Armored, Inc.
 
 ,
 
 226 N.C. App. 203
 
 , 206,
 
 742 S.E.2d 205
 
 , 207 (2013).
 

 V.
 
 Analysis
 

 A.
 
 In re Bullock
 

 Plaintiff acknowledges she "does not dispute that Defendants have a workers' compensation
 
 *899
 
 lien." Plaintiff argues the Full Commission exceeded its subject matter jurisdiction "to the extent that the Full Commission held that the workers' compensation lien extends to funds other than [Plaintiff's] share of the wrongful death recovery[.]"
 

 N.C. Gen. Stat. § 97-10.2
 
 (2017) provides authority for an employer to obtain a subrogation lien for workers' compensation benefits paid by the employer against amounts recovered from and against a third-party tortfeasor. The statute provides, in relevant part:
 

 (f)(1) ... if an award final in nature in favor of the employee has been entered by the Industrial Commission,
 
 then any amount obtained by any person by settlement with, judgment against
 
 , or otherwise from the third party by reason of such injury or death
 
 shall
 
 be disbursed by order of the Industrial Commission for the following purposes and in the following order of priority:
 

 ...
 

 *125
 
 c. Third to the reimbursement of the employer for all benefits by way of compensation or medical compensation expense paid or to be paid by the employer under award of the Industrial Commission.
 

 ...
 

 (h)
 
 In any ... settlement with the third party, every party to the claim for compensation shall have a lien to the extent of his interest
 
 under (f) hereof upon any payment made by the third party by reason of such injury .... and such lien may be enforced
 
 against any person receiving such funds
 
 .
 

 N.C. Gen. Stat. §§ 97-10.2
 
 (f)(1), (h) (emphasis supplied).
 

 Plaintiff contends the Full Commission lacks subject matter jurisdiction to order subrogation of the portions of the third-party settlement that are the distributive shares of the wrongful death recovery of Decedent's six adult children.
 

 Plaintiff acknowledges this Court's binding and prior published opinion in
 
 In re Estate of Bullock
 
 ,
 
 188 N.C. App. 518
 
 ,
 
 655 S.E.2d 869
 
 (2008). Plaintiff states "
 
 Bullock
 
 is the only opinion indicating that the distributive shares of a wrongful death recovery can be used to satisfy a workers' compensation lien, even when the recipients of that recovery never received workers' compensation."
 

 In
 
 Bullock
 
 , a construction worker was killed in the course of his employment.
 
 Bullock
 
 ,
 
 188 N.C. App. at 519
 
 ,
 
 655 S.E.2d at 870
 
 . The decedent construction worker was not married and had no children.
 

 Id.
 

 The decedent's girlfriend and his two minor nephews had lived with him prior to his death.
 

 Id.
 

 The decedent died intestate and his only heir, pursuant to the Intestate Succession Act, was his mother.
 

 Id.
 

 The construction worker's family members filed a workers' compensation claim for death benefits.
 

 Id.
 

 The Industrial Commission issued an opinion and award finding that the minor nephews were wholly and fully dependent on the decedent for support and that they were the only persons entitled to receive death benefits.
 

 Id.
 

 The decedent's estate separately brought a wrongful death claim against the dump truck driver, who had run over decedent, and the driver's employer. After the decedent's estate entered into a settlement agreement of the wrongful death claim with the dump truck driver and the driver's employer, the estate sought approval of the agreement by
 
 *126
 
 the trial court.
 

 Id.
 

 The decedent's employer and insurer filed a motion seeking to set aside the settlement agreement and for a declaration they possessed a workers' compensation lien on the settlement proceeds.
 

 Id.
 

 The trial court denied decedent's employer and insurer's motion to set aside the settlement agreement, approved the settlement agreement, and ruled in part that the decedent's employer and its insurance carrier did not have a valid workers' compensation lien on the settlement proceeds.
 
 Id.
 
 at 520-21,
 
 655 S.E.2d at 871
 
 .
 

 This Court reversed the trial court's ruling.
 
 Id.
 
 at 521,
 
 655 S.E.2d at 871
 
 . The Court
 
 *900
 
 analyzed the plain language of
 
 N.C. Gen. Stat. § 97-10.2
 
 and held the decedent's employer and insurance carrier had "a statutory lien against
 
 any
 
 payment made by a third-party tortfeasor arising out of an injury or death of an employee subject to the [Workers' Compensation] Act."
 

 Id.
 

 at 524
 
 ,
 
 655 S.E.2d at 873
 
 (emphasis in original). This Court also held "[t]his lien may be enforced against '
 
 any
 
 person receiving such funds.' "
 

 Id.
 

 ( (quoting
 
 N.C. Gen. Stat. § 97-10.2
 
 (h) ) (emphasis in original) ).
 

 In reaching its holding, this Court stated:
 

 Although the General Assembly expressly subrogated the rights of an employer's insurance carrier to that of an employer,
 
 see
 

 N.C. Gen. Stat. § 97-10.2
 
 (g), we find no language in section 97-10.2 subrogating the rights of an employer to that of the beneficiaries of the workers' compensation award. If the General Assembly intended to subrogate the employer's rights to that of the beneficiaries of the award, they would have done so expressly as they did in subsection (g). Instead, the extent of an employer's subrogation interest under subsection (f) is measured by compensation paid or to be paid by the employer.
 

 Id.
 

 Bullock
 
 holds that even though the beneficiaries under the third-party wrongful death claim never received any workers' compensation benefits, they were nevertheless subject to the subrogation lien statute under
 
 N.C. Gen. Stat. § 97-10.2
 
 (h).
 
 See
 
 id.
 

 Plaintiff does not contend that
 
 Bullock
 
 is distinguishable from the matter at hand nor does she argue
 
 Bullock
 
 is not controlling. Plaintiff instead contends that
 
 Bullock
 
 was wrongly decided and places her, as the personal representative of Decedent's estate, in a conflict of interest
 
 vis-à-vis
 
 Decedent's six adult children. Plaintiff requests that "[t]o the
 
 *127
 
 extent that the Court feels obligated to follow
 
 Bullock
 
 , which produces this conflict of interest, [Plaintiff] asks the panel members of the Court for at least a dissenting opinion[.]"
 

 The Supreme Court of North Carolina and this Court have long recognized that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989). This Court recently discussed
 
 In re Civil Penalty
 
 in
 
 State v. Gonzalez
 
 and stated:
 

 In re Civil Penalty
 
 stands for the proposition that, where a panel of this Court has decided a legal issue, future panels are bound to follow that precedent. This is so even if the previous panel's decision involved narrowing or distinguishing an earlier controlling precedent-even one from the Supreme Court-as was the case in
 
 In re Civil Penalty
 
 . Importantly,
 
 In re Civil Penalty
 
 does not authorize panels to overrule existing precedent on the basis that it is inconsistent with earlier decisions of this Court.
 

 State v. Gonzalez
 
 , --- N.C. App. ----, ----,
 
 823 S.E.2d 886
 
 , 888-889,
 
 2019 WL 189853
 
 at *3 (2019).
 

 This Court is bound by our prior holding in
 
 Bullock
 

 .
 

 In re Civil Penalty
 
 ,
 
 324 N.C. at 384
 
 ,
 
 379 S.E.2d at 37
 

 .
 
 Any recovery obtained by "any person receiving such funds" through a wrongful death claim against third parties is subject to a subrogation lien under
 
 N.C. Gen. Stat. § 97-10.2
 
 (h) when workers' compensation benefits have been advanced because of a covered employee's death, even if the claimants never received any workers' compensation benefits.
 
 Bullock
 
 ,
 
 188 N.C. App. at 524
 
 ,
 
 655 S.E.2d at 873
 
 .
 

 Being bound by
 
 In re Civil Penalty,
 
 we are without authority to overturn a prior panel of this Court.
 
 324 N.C. at 384
 
 ,
 
 379 S.E.2d at 37
 
 . Plaintiff's argument is overruled.
 

 B.
 
 Jurisdiction Over Property Located Outside North Carolina
 

 Plaintiff argues that "[e]ven if the Industrial Commission could reach the property
 
 *901
 
 belonging to non-'employees' and non-'dependents' under
 
 N.C. Gen. Stat. § 97-10.2
 
 , the Commission cannot exercise its jurisdiction to affect the rights to that property when it is located outside of North Carolina."
 
 *128
 
 Plaintiff asserts the UIM proceeds are "located in South Carolina and paid under South Carolina law in a South Carolina wrongful death action before a South Carolina court" and the Industrial Commission lacks
 
 in rem
 
 jurisdiction over the proceeds and lacks the jurisdiction to order distribution of the UIM proceeds.
 

 Plaintiff does not contend the Industrial Commission lacked
 
 in personam
 
 jurisdiction over her. Plaintiff jointly stipulated with Defendants to the North Carolina Industrial Commission that "[
 
 a]ll parties are properly before the Industrial Commission
 
 and the Industrial Commission has subject matter jurisdiction over this matter." (Emphasis supplied). Regarding the location of the funds from the third-party settlement, the parties stipulated "Plaintiff's attorneys are currently holding the entirety of Plaintiff's $962,500.00 from the Third-Party Recovery in their trust account."
 

 " '
 
 In rem
 
 ' proceedings encompass any action brought against a person in which essential purpose of suit is to determine title to or affect interests in specific property located within territory over which court has jurisdiction."
 
 Green v. Wilson
 
 ,
 
 163 N.C. App. 186
 
 , 189,
 
 592 S.E.2d 579
 
 , 581 (2004) (quoting
 
 Black's Law Dictionary
 
 793 (6th ed. 1990) ). In
 
 Green,
 
 this Court recognized
 

 that a foreign court with
 
 in personam
 
 jurisdiction could render judgments that indirectly affect ownership of property over which that court would have no
 
 in rem
 
 jurisdiction in certain specific instances. However, a court in a jurisdiction foreign to the subject property could not determine title to the property. An example of the former would be an equitable distribution in which the divorcing couple hold property in North Carolina but bring the divorce action in another state. The foreign court would have the authority, under principles of
 
 in personam
 
 jurisdiction, to divide the commonly held title. But where the ownership of the deed is in dispute or there is a cloud on the title, a court must have
 
 in rem
 
 jurisdiction to decide such matters.
 

 Id.
 

 "By means of its power over the person of the parties before it, a court may, in proper cases, compel them to act in relation to property not within its jurisdiction, but its decrees do not operate directly upon the property nor affect its title."
 
 McRary v. McRary
 
 ,
 
 228 N.C. 714
 
 , 718,
 
 47 S.E.2d 27
 
 , 30 (1948).
 

 *129
 
 The Industrial Commission acted within its proper and stipulated personal jurisdiction over Plaintiff to order her to distribute the amount she had obtained from the third-party settlement in accordance with
 
 N.C. Gen. Stat. § 97-10.2
 
 . Even if the $962,500 from the third-party settlement is not present within North Carolina, Defendants may enforce the Commission's opinion and award in South Carolina under South Carolina's version of the Uniform Enforcement of Foreign Judgments Act, S.C. Code. §§ 15-35-900 to -960 (2018).
 

 Plaintiff's argument is also suspect in light of her stipulation that the Industrial Commission's order of distribution could be applied to the $50,000 portion of the third-party settlement obtained from the liability insurance proceeds from the at-fault driver's South Carolina insurance policy. It is uncontested by the parties that the $50,000 portion of the third-party settlement from the liability insurance proceeds is located within South Carolina, was obtained from a South Carolina insurance policy from the wrongful death action brought in South Carolina. Plaintiff's argument is overruled.
 

 C.
 
 Anglin v. Dunbar Armored
 

 The Full Commission's opinion and award also relied, in part, upon this Court's opinion in
 
 Anglin v. Dunbar Armored, Inc.,
 

 226 N.C. App. 203
 
 ,
 
 742 S.E.2d 205
 
 (2013), to conclude North Carolina law allowing for subrogation
 
 *902
 
 liens over third-party wrongful death awards in workers' compensation cases applies in this situation.
 

 The Commission concluded, in part:
 

 2. Under traditional conflict of laws rules, matters affecting the parties' substantive rights are determined by
 
 lex loci
 
 , the law of the situs of the claim, while procedural or remedial issues are determined by the
 
 lex fori
 
 , or law of the forum where the remedy is sought ... It is well-established that rights arising from the subrogation lien under
 
 N.C. Gen. Stat. § 97-10.2
 
 are remedial or procedural in nature, not substantive. ... Therefore, the forum where relief is sought is North Carolina, specifically, the Industrial Commission. ... Thus,
 
 N.C. Gen. Stat. § 97-10.2
 
 , rather than South Carolina law, controls the rights of parties concerning Defendants' statutory subrogation lien.
 
 Anglin v. Dunbar Armored
 

 226 N.C. App. 203
 
 , 209-10,
 
 742 S.E.2d 205
 
 , 209 (2013).
 

 *130
 
 Plaintiff asserts "[i]n
 
 Anglin
 
 , the Court considered if the proceeds from a South Carolina UIM policy affected the
 
 existence
 
 of a workers' compensation lien under North Carolina Law against those proceeds[,]" but did not consider how parties may attach property to satisfy the lien.
 

 In
 
 Anglin
 
 , a South Carolina resident who worked for Dunbar Armored, Inc., a company doing business out of North Carolina, was injured in the course and scope of his employment in an automobile accident which occurred in South Carolina.
 
 226 N.C. App. at 204
 
 ,
 
 742 S.E.2d at 206
 
 . The injured employee received workers' compensation benefits from Dunbar under the North Carolina Workers' Compensation Act.
 
 Id
 
 . The injured employee subsequently settled a liability claim with the at-fault driver.
 

 Id.
 

 Dunbar agreed to settle its subrogation lien on the liability settlement for one-third of the amount of the lien.
 

 Id.
 

 A few months later, the injured employee settled with his UIM insurance carrier.
 

 Id.
 

 Dunbar was unaware of the UIM funds at the time it settled its lien with the injured employee.
 

 Id.
 

 The injured employee then filed a complaint in superior court seeking "declaratory relief and to eliminate or reduce [Dunbar's] subrogation interest[,]" pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (j).
 

 Id.
 

 The injured employee "contend[ed] that South Carolina law applies because [he] was entitled to UIM funds pursuant to a South Carolina Policy." The employee further contended that Dunbar could not subrogate UIM funds under South Carolina law,
 
 S.C. Code Ann. § 38-77-160
 
 .
 

 Id.
 

 The trial court ruled, in part, that North Carolina law applied over South Carolina law and that Dunbar was entitled to the full amount of its subrogation lien.
 

 Id.
 

 On appeal, this Court analyzed the case of
 
 Cook v. Lowe's Home Centers, Inc.
 
 ,
 
 209 N.C. App. 364
 
 ,
 
 704 S.E.2d 567
 
 (2011), which had held "that
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) 'is remedial in nature' and that 'remedial rights are determined by the law of the forum.' "
 
 Anglin
 
 ,
 
 226 N.C. App. at 207
 
 ,
 
 742 S.E.2d at 208
 
 (quoting
 
 Cook
 
 ,
 
 209 N.C. App. at 367-68
 
 ,
 
 704 S.E.2d at
 
 570-71 ).
 

 This Court reasoned in
 
 Cook:
 

 As to substantive laws, or laws affecting the cause of action, the
 
 lex loci
 
 -or law of the jurisdiction in which the transaction occurred or circumstances arose on which the litigation is based-will govern; as to the law merely going to the remedy, or procedural in its nature, the
 
 lex
 

 *131
 

 fori
 
 -or law of the forum in which the remedy is sought-will control.
 

 Where a lien is intended to protect the interests of those who supply the benefit of assurance that any work-related injury will be compensated,
 
 it is remedial in nature
 
 . A statute that provides a remedial benefit must be construed broadly in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained.
 

 Cook
 
 ,
 
 209 N.C. App. at 366-67
 
 ,
 
 704 S.E.2d at 569-70
 
 (emphasis supplied) (citations, quotation marks, ellipses, and brackets omitted).
 

 Following
 
 Cook
 
 , this Court held in
 
 Anglin
 
 that because "
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) is
 
 *903
 
 remedial in nature and remedial rights are determined by the law of the forum[,] ... the trial court did not err in applying
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) to [the injured employee's] UIM funds received under a South Carolina insurance policy."
 
 Anglin
 
 ,
 
 226 N.C. App. at 209-10
 
 ,
 
 742 S.E.2d at 209
 
 (citation and internal quotation marks omitted) (alteration in original);
 
 see
 

 Robinson v. Leach,
 

 133 N.C. App. 436
 
 ,
 
 514 S.E.2d 567
 
 (determining that subrogation rights on UIM funds are procedural in nature and controlled by the law of North Carolina as the forum state).
 

 This Court affirmed the trial court's judgment that North Carolina law applied to allow subrogation of UIM proceeds procured under an out-of-state UIM policy and that Dunbar was entitled to the remaining proceeds from the lien on the UIM funds.
 
 Id.
 
 at 205,
 
 742 S.E.2d at 207
 
 .
 

 Anglin
 
 involved a proceeding brought in the trial court pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) of the Workers' Compensation Act. The instant case concerns whether the Industrial Commission possessed the authority to award a subrogation lien to Defendants and order disbursement pursuant to
 
 N.C. Gen. Stat. § 97-10.2
 
 (f). The reasoning this Court applied in
 
 Cook
 
 , and followed in
 
 Anglin
 
 , to
 
 N.C. Gen. Stat. § 97-10.2
 
 (j) is applicable here.
 
 N.C. Gen. Stat. § 97-10.2
 
 (f) is remedial in nature because it provides for "a lien [ ] intended to protect the interests of those who supply the benefit of assurance that any work-related injury will be compensated."
 
 Cook
 
 ,
 
 209 N.C. App. at 366-67
 
 ,
 
 704 S.E.2d at 569-70
 
 .
 

 North Carolina is the forum state in this dispute, and
 
 N.C. Gen. Stat. § 97-10.2
 
 (f) is remedial in nature. The precedents hold our statute applies over South Carolina law to grant Defendants a subrogation lien on the UIM proceeds recovered in the third-party settlement.
 
 See
 

 Anglin
 
 ,
 
 226 N.C. App. at 209-10
 
 ,
 
 742 S.E.2d at 209
 
 .
 

 *132
 
 Plaintiff contends that because the UIM policies were South Carolina policies, the Industrial Commission erred in concluding that
 
 N.C. Gen. Stat. § 97-10.2
 
 (f) applied over South Carolina's anti-subrogation law on UIM proceeds, S.C. Code. § 38-77-160. Plaintiff asserts the commercial UIM policy, though purchased and issued in North Carolina, is a South Carolina policy because of an endorsement attached thereto, which states:
 

 THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. SOUTH CAROLINA UNDERINSURED MOTORIST COVERAGE
 

 For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, South Carolina, this endorsement modifies insurance provided under the following:
 

 BUSINESS AUTO COVERAGE FORMGARAGE COVERAGE FORMMOTOR CARRIER COVERAGE FORMTRUCKERS COVERAGE FORM
 

 With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement. ...
 

 CONFORMITY TO STATUTE
 

 This endorsement is intended to be in full conformity with the South Carolina Insurance Laws. If any provision of this endorsement conflicts with that law, it is changed to comply with the law.
 

 Plaintiff also contends that her and her decedent's personal UIM policy was also a South Carolina policy "because it insured the Walkers as South Carolina residents with vehicles located in that state."
 

 Presuming,
 
 arguendo
 
 , as Plaintiff asserts, the UIM policies are South Carolina policies, North Carolina's subrogation law applies over South Carolina law as the law of the forum state, pursuant to
 
 Anglin
 
 .
 
 See
 

 Anglin
 
 ,
 
 226 N.C. App. at 209-10
 
 ,
 
 742 S.E.2d at 209
 
 . The UIM policy at issue in
 
 Anglin
 
 was a South Carolina policy, the injured employee was a South Carolina resident, and the automobile accident occurred in South Carolina.
 

 *904
 

 Id
 
 . at 204,
 
 742 S.E.2d at 206
 
 . This Court held North Carolina
 
 *133
 
 law, allowing for subrogation over the UIM policy proceeds, controlled over South Carolina law, and affirmed the trial court's order.
 

 Id.
 

 at 205
 
 ,
 
 742 S.E.2d at 207
 
 . Plaintiff's argument is overruled.
 

 VI.
 
 Conclusion
 

 The Full Commission correctly concluded Defendants could assert a subrogation lien for workers' compensation benefits paid to Plaintiff on the UIM policy proceeds obtained by Plaintiff in the South Carolina wrongful death action. The Industrial Commission possessed the jurisdiction to order disbursement of the third-party settlement proceeds. The opinion and award of the Industrial Commission is affirmed.
 
 It is so ordered.
 

 AFFIRMED.
 

 Judges STROUD and ZACHARY concur.