IN THE SUPREME COURT OF NORTH CAROLINA

No. 99PA19

Filed 14 August 2020

GWENDOLYN DIANETTE WALKER, Widow of ROBERT LEE WALKER, Deceased Employee

v.

K&W CAFETERIAS, Employer, LIBERTY MUTUAL INSURANCE COMPANY, Carrier

On discretionary review pursuant to N.C.G.S. § 7A-31 of the unanimous decision of the Court of Appeals, 264 N.C. App. 119, 824 S.E.2d 894 (2019), affirming an Opinion and Award entered on 27 February 2018 by the North Carolina Industrial Commission. On 11 June 2019, the Supreme Court allowed plaintiff's petition for discretionary review. Heard in the Supreme Court on 6 January 2020.

*The Sumwalt Law Firm, by Vernon Sumwalt, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog, LLP, by Roy G. Pettigrew, for defendant-appellees.*

HUDSON, Justice.

Pursuant to plaintiff's petition for discretionary review, we review the decision of the Court of Appeals, which affirmed the 27 February 2018 Opinion and Award of the North Carolina Industrial Commission (the Commission). The Commission found that the uninsured/underinsured motorist (UIM) proceeds that plaintiff received on behalf of her husband's estate through the settlement of a South Carolina wrongful death lawsuit were subject to defendants' subrogation lien under N.C.G.S. § 97-10.2. We conclude that, by an endorsement to the UIM policy covering the vehicle that

decedent was driving when he was killed, South Carolina insurance law applies, and it bars subrogation of UIM proceeds. S.C. Code § 38-77-160 (2015). Therefore, the UIM proceeds that plaintiff recovered from the wrongful death lawsuit may not be used to satisfy defendants' workers' compensation lien under N.C.G.S. § 97-10.2. Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.[1]

Factual and Procedural Background

On 16 May 2012, Robert Lee Walker (decedent), plaintiff's husband and an employee of defendant K&W Cafeterias (K&W), was involved in a motor vehicle accident with a third-party in Dillon, South Carolina. Decedent died as a result of his injuries. The vehicle that decedent was driving was owned by K&W, a North Carolina corporation headquartered in Winston-Salem, North Carolina.

Prior to the occurrence of the accident in which Mr. Walker died, the vehicle insurance policy applicable here was modified by an endorsement, pertinent parts of which are quoted below:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> SOUTH CAROLINA UNDERINSURED MOTORISTS COVERAGE

---

[1] Because of this holding, we need not—and do not—reach the issue of whether the Commission erred in ordering that any workers' compensation lien could be satisfied by distributing UIM proceeds held for wrongful death beneficiaries who never received workers' compensation benefits.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in South Carolina, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A.      Coverage

1.      We will pay in accordance with the South Carolina Underinsured Motorists Law all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "underinsured motor vehicle."

. . . .

E.      Changes In Conditions

. . . .

5.      The following provision is added:

CONFORMITY TO STATUTE

This endorsement is intended to be in full conformity with the South Carolina Insurance Laws. If any provision of this endorsement conflicts with that law, it is changed to comply with the law.

Decedent's widow, Gwendolyn Dianette Walker, filed a workers' compensation claim with the North Carolina Industrial Commission (the Commission) for medical expenses and death benefits resulting from decedent's death under N.C.G.S. § 97-38–

40. On 7 January 2013, the Commission entered a Consent Opinion and Award ordering defendants to pay $333,763 in workers' compensation benefits to plaintiff.[2]

In 2014, plaintiff, as representative of decedent's estate, filed a new and separate civil action in South Carolina—a wrongful death case seeking damages from the driver of the motor vehicle (the third-party) who was at fault in the accident that resulted in Mr. Walker's death. In 2016, plaintiff and the third-party reached a settlement agreement, according to which plaintiff recovered a total of $962,500 on behalf of decedent's estate. The recovery included: (1) $50,000 in liability benefits from the third-party's insurer; (2) $12,500 in personal UIM proceeds from plaintiff's and decedent's own personal UIM policy; and (3) $900,000 in UIM proceeds from a commercial UIM policy that K&W purchased with its automobile insurance carrier.

On 21 March 2016, Liberty Mutual Insurance Co.—the workers' compensation insurance carrier for K&W and co-defendant in this case—filed a request for a hearing with the North Carolina Industrial Commission in which it sought repayment of the workers' compensation death benefits it had paid to plaintiff beginning in 2013, claiming a lien under N.C.G.S. § 97-10.2 on the UIM proceeds that she recovered from the South Carolina wrongful death settlement in 2016.

---

[2] Because all of the decedent's children were adults at the time of his death, under the statute, only the widow was entitled to the death benefit. N.C.G.S. § 97-39; N.C.G.S. § 97-2(12) (" 'Child,' 'grandchild,' 'brother,' and 'sister' include only persons who at the time of the death of the deceased employee are under 18 years of age.").

On 30 March 2016, plaintiff filed a declaratory judgment action against defendants in South Carolina, asserting that S.C. Code § 38-77-160 precluded subrogation and assignment to defendants of the UIM proceeds that plaintiff had been awarded in the settlement. On 2 May 2016, defendants removed the action to the United States District Court for the District of South Carolina on the basis of diversity jurisdiction. The United States District Court ultimately abstained from hearing the declaratory judgment action.

Meanwhile, on 13 June 2016, plaintiff filed a motion in the North Carolina Industrial Commission to stay all proceedings on defendants' subrogation claim there, pending the result of the federal litigation. Plaintiff's motion was denied on 28 June 2016. Plaintiff then filed a motion to reconsider, which the Commission denied on 18 July 2016. Plaintiff appealed and filed another motion for stay. Plaintiff's appeal was heard by a Deputy Commissioner.

In its 10 July 2017 Opinion and Award, the Deputy Commissioner denied plaintiff's motion to stay the proceedings and ordered the distribution of plaintiff's entire recovery from the South Carolina wrongful death settlement with the at-fault driver (the third-party recovery). The Deputy Commissioner concluded that defendants were entitled to subrogation under N.C.G.S. § 97-10.2(f)(1)(c), (h), and ordered that defendants be reimbursed out of the third-party recovery for the $333,763 in workers' compensation benefits that they had paid to Mrs. Walker under the 7 January 2013 Consent Opinion and Award.

Plaintiff appealed the 10 July 2017 Opinion and Award to the Full Commission, which affirmed the Deputy Commissioner's decision. Plaintiff then appealed to the Court of Appeals.

The Court of Appeals affirmed, holding in pertinent part that "[t]he Full Commission correctly concluded Defendants could assert a subrogation lien for workers' compensation benefits paid to Plaintiff on the UIM policy proceeds obtained by Plaintiff in the South Carolina wrongful death action." *Walker v. K&W Cafeterias*, 264 N.C. App. 119, 133, 824 S.E.2d 894, 904 (N.C. Ct. App. 2019). As explained below, we conclude that defendants may not satisfy their workers' compensation lien by collecting from plaintiff's recovery of UIM proceeds in her South Carolina wrongful death settlement. Accordingly, we reverse the decision of the Court of Appeals.

Analysis

First, we emphasize that this case is not plaintiff's workers' compensation claim. That claim was fully resolved in 2013 when death benefits were paid to plaintiff under the Workers' Compensation Act due to Mr. Walker's work-related death. Instead, here we review what should happen to over $900,000 that was paid to plaintiff in the South Carolina wrongful death settlement with the at-fault driver. That settlement was reached in 2016, and to date, the money remains in the trust account of plaintiff's attorneys.

Because the 2012 workers' compensation case was brought in North Carolina, Liberty Mutual sought to have the Commission order plaintiff to reimburse the

workers' compensation benefits she had been paid with the as-yet-undistributed recovery she received in her South Carolina wrongful death settlement. Although the Commission and the Court of Appeals concluded that Liberty Mutual could be reimbursed with plaintiff's wrongful death UIM proceeds, we disagree.

For the reasons below, we conclude that the South Carolina UIM policy—a contract to which defendants are party and according to which the wrongful death settlement proceeds were paid—controls the outcome here. That policy requires the application of South Carolina law to the payment of UIM proceeds. Under South Carolina UIM law, an insurer is barred, without exception, from seeking to be reimbursed with UIM proceeds for benefits it has previously paid. S.C. Code § 38-77-160 ("Benefits paid pursuant to this section are not subject to subrogation and assignment."). Accordingly, we reverse the decision of the Court of Appeals and remand to the Commission for proceedings not inconsistent with this opinion.

This case presents a single issue of law, i.e., a conclusion of law by the Commission, which we review de novo. N.C.G.S. § 97-86 ("The award of the Industrial Commission . . . shall be conclusive and binding as to all questions of fact; but either party to the dispute may, within 30 days . . . appeal from the decision of the Commission . . . for errors of law . . . . The procedure for the appeal shall be as provided by the rules of appellate procedure.").

We must determine whether to apply North Carolina or South Carolina law to the attempted subrogation of plaintiff's wrongful death settlement UIM proceeds. The

Court of Appeals analyzed this question as an abstract choice of law issue and concluded that North Carolina law applies. *See Walker*, 264 N.C. App. at 131, 824 S.E.2d at 902–03 (discussing *Anglin v. Dunbar Armored, Inc.*, 226 N.C. App. 203, 742 S.E.2d 205 (2013)). We do not agree with the conclusion that this case presents a choice of law issue; instead we conclude that this issue is properly analyzed under contract law interpreting a choice-of-law clause. As we are basing our decision on contractual terms rather than legal principles related to choice of law, we need not— and do not—go beyond the contract as modified by its endorsement; by the explicit terms of that contract, the UIM proceeds are paid and governed by South Carolina law.

The dissent maintains that plaintiff's stipulation in 2012 to the jurisdiction of the Commission over her workers' compensation claim carries significance here. As noted above, this case is not the workers' compensation claim, but involves the settlement proceeds paid under a UIM policy to settle a civil action filed in South Carolina against the at-fault driver. Here, in the proceedings before the Commission, the parties' stipulations included the following:

> 1.    . . . However, Plaintiff disputes if the Industrial Commission has personal or *in rem* jurisdiction to exercise authority over underinsured motorist ("UIM") proceeds paid under a South Carolina UIM policy . . . and whether those proceeds can be attached to satisfy Defendant's subrogation interest under N.C.[G.S.] § 97-10.2.
>
> 2.    All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation

> Act, N.C.[G.S.] § 97-1 *et seq.* ("the Act"), except to the extent
> that Plaintiff contends the Industrial Commission's
> jurisdiction might be limited because of the circumstances
> expressed in paragraph 1.

Unlike the stipulations entered in the workers' compensation claim, the ones above, which are included in the Full Commission's 2017 Opinion and Award, specifically reserve the arguments plaintiff raises here.

Defendants argue that the commercial UIM policy purchased by K&W is not a South Carolina UIM policy. Specifically, they point out that the parties stipulated before the Commission that the commercial UIM policy was purchased and entered into in North Carolina. Defendants argue that this fact is dispositive because, under N.C.G.S. § 58-3-1, an insurance policy is "deemed to be made" in North Carolina if it is the state where "applications for [the policy] are taken." N.C.G.S. § 58-3-1 (2019).

More significantly, defendants' argument overlooks the effect of the endorsement that was added to the commercial UIM policy on 7 July 2011, titled "South Carolina Underinsured Motorist Coverage." Specifically, the endorsement states that it "changes the policy."[3] The endorsement also states that it "is intended to be in full conformity with the South Carolina Insurance Laws" and that "[i]f any provision of this endorsement conflicts with that law, it is changed to comply with the

---

[3] Even under North Carolina insurance law, an endorsement like this one that "changes the contract" becomes part of that contract and is treated as such. *See e.g.*, *Scottsdale Ins. Co v. Travelers Indem. Co.*, 152 N.C. App. 231, 234, 566 S.E.2d 748, (2002) (treating the endorsement as part of the contract for the purposes of construing ambiguity in favor of the insured).

law." Further, the endorsement states that "[the insurance carrier] will pay in accordance with the South Carolina Underinsured Motorists Law." The clear intent and effect of this endorsement was to provide for the application of South Carolina law to all UIM payments under the policy.

Furthermore, the vehicle operated by decedent at the time of the accident fell within the categories of vehicles for which the policy endorsement intended to apply South Carolina law. The endorsement modified the insurance policy for "a covered 'auto' licensed or principally garaged in" South Carolina. As found by the Commission in the 10 July 2017 Opinion and Award, the vehicle decedent was driving at the time of the accident was registered, garaged, and driven in South Carolina. These factors, and the fact that the policy endorsement explicitly provided as a matter of contract that South Carolina UIM law would apply to payments made under the commercial UIM policy, demonstrate that South Carolina law should apply here. Accordingly, we hold that the endorsement requires South Carolina UIM law to apply here.[4]

The applicable South Carolina statutes include the following:

> All contracts of insurance on property, lives, or interests in
> this State are considered to be made in the State . . . and
> are subject to the laws of this State.

---

[4] The dissent suggests that the intent of the North Carolina General Assembly in its Workers' Compensation Act controls the distribution of the UIM proceeds in the South Carolina civil case. However, K&W purchased the UIM policy and specifically agreed therein that any such payments be covered by South Carolina law. Because we conclude that the UIM payments here are governed by South Carolina law under the terms of the policy contract, we conclude that the intent of the North Carolina General Assembly does not control.

S.C. Code § 38-61-10 (2015).

> Additional uninsured motorist coverage; underinsured motorist coverage. Automobile insurance carriers shall offer, at the option of the insured, uninsured motorist coverage [and] underinsured motorist coverage, up to the limits of the insured liability coverage. . . . Benefits paid pursuant to this section are not subject to subrogation and assignment.

S. C. Code § 38-77-160.

By its plain language, S.C. Code § 38-77-160 prohibits subrogation of UIM payments like those paid to plaintiff in her wrongful death settlement. Accordingly, having concluded that South Carolina law applies to proceeds paid under Liberty Mutual's UIM insurance policy, defendants' subrogation lien under N.C.G.S. § 97-10.2 cannot be satisfied by the UIM proceeds that plaintiff received as part of the wrongful death settlement.

The dissent here proposes, without explanation or authority, that applying South Carolina law as required by the contract would allow for "double recovery." There can be no double recovery in these circumstances, where Mrs. Walker was awarded workers' compensation death benefits, a limited statutory remedy designed to pay some part of lost wages, medical and funeral expenses only. The UIM proceeds, limited by statute to one million dollars, are also provided by law as a limited remedy to give at least some recovery to the victims of an underinsured at-fault driver. Neither remedy (nor the two combined) purports to fully compensate Mrs. Walker or her six grown children for their losses due to Mr. Walker's death, let alone to exceed

any actual damages they have suffered. Moreover, if defendants here were permitted to recover more than $300,000 out of the UIM proceeds, the grown children (who were not eligible to receive the workers' compensation benefits) would be deprived in significant part of even that limited remedy. We see no indication of a double recovery here.

Conclusion

Because we conclude that South Carolina law applies and prohibits the subrogation of the UIM proceeds paid on account of decedent's death, we reverse and remand to the Commission for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Justice NEWBY dissenting.

This case asks whether a plaintiff who seeks benefits under the North Carolina Workers' Compensation Act (the Act) subjects herself to North Carolina's accompanying remedial laws, including those concerning subrogation. Under the General Assembly's carefully crafted statutory scheme, when a plaintiff chooses to file for benefits under the Act, the plaintiff also accepts the accompanying provisions regarding subrogation. Plaintiff had the option to proceed under either North Carolina or South Carolina's workers' compensation acts; plaintiff chose the more generous North Carolina Act. In her initial proceeding to obtain benefits under North Carolina's Act, plaintiff stipulated that she was "subject to and bound by the provisions of the North Carolina Workers' Compensation Act" and that "[t]he North Carolina Industrial Commission has jurisdiction over the parties and the subject matter involved in this case." Having availed herself of the benefits under the Act, she is also bound by the terms of North Carolina's remedial laws, including those allowing an employer to subrogate recoveries from third-parties which prevent double recoveries. Because plaintiff received a separate third-party recovery after defendants had provided benefits under the Act, defendants are entitled to proceed under the Act to seek subrogation of those proceeds. As such, the Court of Appeals properly affirmed the Industrial Commission's holding that plaintiff's wrongful death proceeds were subject to subrogation.

To reach its outcome, the majority, however, mischaracterizes the issue here and relies solely on what it terms as contract law and South Carolina insurance law. The majority ignores that plaintiff chose to file for workers' compensation in North Carolina and, as such, subjected herself to all aspects of the Act. The majority allows a plaintiff to choose the best parts of the Act, permitting plaintiff to obtain the full benefits of the Act without being subject to the accompanying subrogation provisions designed to prevent double recovery. By doing so, the majority essentially rewrites the North Carolina Workers' Compensation Act by deleting the comprehensive nature of its provisions. The majority ultimately concludes that so long as there is a rider to the insurance policy applying a state's law that prohibits subrogation, a plaintiff who has an accident outside of North Carolina but files for benefits in North Carolina may be eligible for double recovery.[1] Because plaintiff chose to proceed under North Carolina Workers' Compensation Act, she is bound by the subrogation provision of N.C.G.S. § 97-10.2(f) (2019). As the Court of Appeals held, the proceeds from the separate third-party recovery she obtained are subject to subrogation by the employer. Accordingly, I respectfully dissent.

---

[1] Moreover, the full ramifications of the majority decision are unclear given that there are numerous companies located in North Carolina that do business in other states and have similar riders on their insurance policies conforming the policies to the laws of the other states. The majority's holding will certainly have a significant impact on the insurance premiums that North Carolina companies pay.

Decedent, a South Carolina resident, was killed in a vehicular accident in South Carolina, driving a truck owned by his employer, K&W Cafeterias, Inc., a North Carolina corporation. A third party caused the accident. K&W had insured the truck under a blanket vehicular insurance policy purchased and entered into within North Carolina. Because K&W conducted business in South Carolina, the policy contained a required endorsement providing the coverage to be in conformity with "South Carolina Insurance Laws."[2]

The deceased employee's widow (plaintiff), a South Carolina resident, could have pursued workers' compensation benefits under North Carolina or South Carolina law, because the deceased was employed by a North Carolina corporation. On 21 August 2012, plaintiff decided to file for death benefits under North Carolina's Workers' Compensation Act. As a part of plaintiff's initial action seeking death benefits under the Act, the parties stipulated the following:

> 1.     The date of the admittedly compensable injury that is the subject of this claim is May 16, 2012. On that date, Employee-Plaintiff died as the result of a motor vehicle accident arising out of and in the course of his employment with Defendant-Employer.
>
> 2.     At all relevant times, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.

---

[2] K&W, doing business in multiple states, had multiple endorsements in its UIM policy, including endorsements or financial responsibility identification cards for Florida, West Virginia, and Virginia.

. . . .

> 6.     The North Carolina Industrial Commission has jurisdiction over the parties and the subject matter involved in this case.

Based on the stipulations and other evidence, the Industrial Commission entered an order requiring defendants to pay plaintiff a total of $333,763 in benefits.

On 26 August 2014, after accepting benefits under the North Carolina Workers' Compensation Act, plaintiff, the appointed representative of decedent's estate, filed a wrongful death and survival action in South Carolina against the at-fault driver and his father. In March 2016, about a year and a half after plaintiff filed the action, the parties settled the lawsuit, from which plaintiff received $962,500 (the third-party settlement). The settlement consisted of (1) $50,000 in liability benefits from the at-fault driver's insurer under a South Carolina insurance policy; (2) $12,500 from the underinsured motorist (UIM) coverage of plaintiff and decedent's own personal vehicle from their automobile insurance carrier; and (3) $900,000 in commercial UIM coverage from employer K&W's automobile insurance carrier pursuant to their commercial UIM coverage for the vehicle decedent was driving when the accident occurred. Throughout the proceeding, plaintiff has conceded that the $50,000 in benefits provided from the at-fault driver's insurer through a South Carolina insurance policy is subject to subrogation under both North Carolina law and South Carolina law.

On 21 March 2016, defendants filed the appropriate form with the North Carolina Industrial Commission for a subrogation lien of $333,763 against the $962,500 that plaintiff had received from the third-party settlement. Defendants proceeded under the relevant portion of the Act that allows a defendant to be subrogated against any recovery. Plaintiff had initially stipulated that she was subject to the North Carolina Industrial Commission's jurisdiction when she filed to receive benefits. However, after receiving full benefits, when defendants filed for subrogation, plaintiff for the first time disputed whether the Industrial Commission had jurisdiction over the UIM policy proceeds, and whether those proceeds were subject to subrogation under N.C.G.S. § 97-10.2.[3] On 10 July 2017, the deputy commissioner ruled in defendants' favor, finding that plaintiff must satisfy defendants' $333,763 subrogation lien from the $962,500 third-party settlement.

Plaintiff then appealed to the full Industrial Commission, which ultimately held that defendants were entitled to a subrogation lien of the entire third-party settlement proceeds, "not just [plaintiff's] share of the Third-Party Recovery." The Commission reasoned that "[p]laintiff voluntarily triggered the Commission's jurisdiction by filing a claim for benefits under the Act and obtaining a final award of benefits via the Consent Opinion and Award, in which [p]laintiff explicitly

---

[3] The majority does not discuss the stipulations entered into initially by the parties and seems to confuse those stipulations with the stipulations made later when plaintiff was contesting defendants' subrogation rights.

acknowledged the applicability of the Act and the jurisdiction of the Commission." Moreover, because plaintiff was seeking relief in North Carolina, where she willingly chose to file for benefits under the Act, and because N.C.G.S. § 97-10.2 is remedial in nature, the Commission concluded as a matter of law that the statute allowed defendants to seek subrogation of the relevant portion of the wrongful death proceeds. Essentially, plaintiff's choice to subject herself to the benefits of the Act also warranted the application of the relevant procedural subrogation provision as provided by the North Carolina legislature.

The Court of Appeals upheld the full Commission's decision, holding that defendants were entitled to a lien against the third-party settlement proceeds. *Walker v. K&W Cafeterias*, 824 S.E.2d 894, 904 (N.C. Ct. App. 2019). The Court of Appeals reasoned, *inter alia*, that regardless of whether the UIM policy was a South Carolina policy, plaintiff had chosen North Carolina as the forum state in which to file for benefits, and thus North Carolina law would apply as the law of the forum state. *Id.* at 903–04. This rationale is consistent with *Anglin v. Dunbar*, which reaffirmed that remedial rights are determined by the law of the forum state. *Id.* (citing *Anglin v. Dunbar Armored, Inc.*, 226 N.C. App. 203, 204–05, 209–10, 824 S.E.2d 894, 206–07, 209 (2013)). As such, the Court of Appeals in this case concluded that defendants were entitled to seek subrogation of the wrongful death proceeds. *Id.* at 904.

The question presented here is whether the General Assembly intended for someone who receives benefits under the Act to be bound by its remedial provisions.

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998)). "The best indicia of that intent are the language of the statute[,] . . . the spirit of the act[,] and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citation omitted).

The North Carolina legislature has chosen to provide generous compensation for injured workers and their heirs through the North Carolina Workers' Compensation Act. "[T]he purpose of the North Carolina Workers' Compensation Act is not only to provide a swift and certain remedy to an injured worker, but is also to ensure a limited and determinate liability for employers." *Estate of Bullock v. C.C. Mangum Co.*, 188 N.C. App. 518, 522, 655 S.E.2d 869, 872 (2008) (citing *Barnhardt v. Cab Co.*, 266 N.C. 419, 427, 146 S.E.2d 479, 484 (1966)).

Notably, the Act is comprehensive. Given the fact that the Act provides extensive and generous benefits to individuals, the legislature has balanced an employer's duty to provide compensation with its right to subrogate those benefits where an individual or estate receives a second, separate recovery for the same injury. "The legislative intent behind the Workers' Compensation Act is not to provide an employee with a windfall of a recovery from both the employer and the third-party tortfeasor." *Id.* (citing *Radzisz v. Harley Davidson of Metrolina*, 346 N.C. 84, 89, 484 S.E.2d 556, 569 (1997)). Thus, section 97-10.2 provides that an employer may obtain

a subrogation lien, to the extent of the amount of benefits paid, against certain third-party recovery amounts. The statute sets forth that:

> (f)(1) . . . if an award final in nature in favor of the employee has been entered by the Industrial Commission, *then any amount obtained by any person by settlement with, judgment against*, or otherwise from the third party by reason of such injury or death *shall* be disbursed by order of the Industrial Commission for the following purposes and in the following order of priority:
>
> . . . .
>
> c. Third to the reimbursement of the employer for all benefits by way of compensation or medical compensation expense paid or to be paid by the employer under award of the Industrial Commission.
>
> . . . .
>
> (h) *In any . . . settlement with the third party, every party to the claim for compensation shall have a lien to the extent of his interest* under (f) hereof upon any payment made by the third party by reason of such injury or death . . . and such lien may be enforced *against any person receiving such funds.*

N.C.G.S. § 97-10.2 (emphases added).

Whether this statute applies here also depends on if section 97-10.2 is substantive or remedial. *Lex loci*, or the "law of the jurisdiction in which the transaction occurred or circumstances arose on which the litigation is based," governs substantive laws. *Cook v. Lowe's Home Centers, Inc.*, 209 N.C. App. 364, 366, 704 S.E.2d 567, 569 (2011) (citing *Charnock v. Taylor*, 223 N.C. 360, 361, 26 S.E.2d 911,

913 (1943)). Alternatively, *lex fori*, or "the law of the forum in which the remedy is sought," governs when the statute at issue is remedial. *Id.*

"Where a lien is intended to protect the interests of those who supply the benefit of assurance that any work-related injury will be compensated, it is remedial in nature." *Id.* at 367, 704 S.E.2d at 570. Because N.C.G.S. § 97-10.2(f), like N.C.G.S. § 97-10.2(j), "is remedial in nature and remedial rights are determined by the law of the forum," *Anglin*, 226 N.C. App. at 209, 742 S.E.2d at 209 (cleaned up) (citation omitted), North Carolina law applies.

Here plaintiff chose to pursue workers' compensation benefits in North Carolina instead of pursuing benefits in her home state, which was also the location of the accident. As a part of her initial filing with the Industrial Commission seeking benefits under the Act, plaintiff explicitly stipulated that she was "subject to and bound by the provisions of the North Carolina Workers' Compensation Act" and that "the North Carolina Industrial Commission had jurisdiction over the parties and the subject matter involved in this case." Thus, plaintiff subjected herself to North Carolina jurisdiction by initially filing for benefits in North Carolina. In order to receive employer provided benefits under the Act, plaintiff necessarily consented to the application of North Carolina's remedial laws, as North Carolina is the forum state in this dispute.

Because N.C.G.S § 97-10.2(f) is remedial in nature, and because plaintiff consented to the application of North Carolina's remedial laws when she initially filed to receive benefits under the Act, plaintiff is bound by N.C.G.S § 97-10.2. Plaintiff chose to file for benefits in North Carolina, under the Act which provides generous benefits, but those benefits are also balanced by the corresponding subrogation provisions. On the other hand, South Carolina does not allow subrogation of UIM proceeds, but that balances the more limited benefits that it provides through its own workers' compensation act. Had plaintiff wanted the benefit of South Carolina's policy which prevents subrogation, she should have, and could have, filed for workers' compensation benefits in South Carolina. Simply put, the General Assembly did not intend for a plaintiff to choose to subject herself to North Carolina's jurisdiction to receive benefits, but reject North Carolina's jurisdiction when it comes to the remedial aspects of North Carolina's Workers' Compensation scheme, including an employer's ability to subrogate any proceeds that a plaintiff or estate receives from a third-party.

The majority concludes that plaintiff did not stipulate to the application of North Carolina law to the UIM proceeds since she did not stipulate to this fact in the full Industrial Commission proceeding. In doing so, the majority ignores that plaintiff chose the forum state by filing for benefits under the Act, and by stipulating to the application of North Carolina's jurisdiction at that point, which results in the application of North Carolina remedial laws. The majority instead treats this case in

a vacuum as one solely involving an insurance contract interpreting a choice-of-law clause. The majority also fails to acknowledge the comprehensive nature of the North Carolina Workers' Compensation Act, allowing a plaintiff to choose only the best portions of the Act.

Moreover, though the application is not entirely clear, it seems the majority's analysis will result on one hand in a North Carolina resident who has an accident in South Carolina achieving a double recovery by receiving workers' compensation benefits without subrogation. On the other hand, a North Carolina resident who has an accident in North Carolina would not achieve a double recovery as he would be subject to the subrogation statutes, even when both parties choose to file for benefits in North Carolina. Surely the North Carolina legislature did not intend to provide this windfall recovery to some individuals while limiting the recovery for others. The intent of the North Carolina legislature is relevant where a plaintiff subjects herself to benefits under the Act by filing in North Carolina, despite the majority's contention to the contrary.[4]

Plaintiff's policy and the rider here cannot be viewed in a vacuum as presenting only a question of contract law as the majority contends. By filing for benefits under the Act, plaintiff is bound by North Carolina's clearly established statutory provisions

---

[4] The majority contends that since the recovering parties under workers' compensation and the UIM policy may be different, some may be deprived of recovery through subrogation under North Carolina law. This is a policy determination appropriately made by the legislature.

allowing subrogation of any third-party proceeds. N.C.G.S. § 97-10.2(f)(1), (h). The decision of the Court of Appeals upholding the decision of the Industrial Commission should be affirmed. I respectfully dissent.