IN THE MATTER OF THE ESTATE OF CHRISTOPHER BULLOCK, DECEASED, KENNETH B. PARKER, AND PURYEAR TRANSPORT, INC., PETITIONERS v. C.C. MANGUM COMPANY AND AMERICAN ZURICH INSURANCE COMPANY, RESPONDENTS

No. COA07-146

(Filed 5 February 2008)

**1. Workers' Compensation— lien—third-party wrongful death settlement—subrogation**

In an action involving a wrongful death settlement and a workers' compensation lien, the trial court improperly concluded that the rights of respondents (the deceased's employer and its insurance company) were subrogated to those of the decedent's minor nephews (whom the Industrial Commission found to be entitled to death benefits). There is no language in N.C.G.S. § 97-10.2 subrogating the rights of an employer to that of the beneficiaries of a workers' compensation award. The trial court's conclusion allows two recoveries, one through the employee's dependents, and one through his estate.

**2. Workers' Compensation— lien—reduction—findings**

A case involving a wrongful death settlement and a workers' compensation lien was remanded where the trial court did not make the required findings for adjusting a workers' compensation lien.

**3. Workers' Compensation— third party wrongful death settlement—written consent of employer**

In an action remanded on other grounds, the Court of Appeals did not consider whether a third-party wrongful death settlement should have been set aside for failure to obtain the written consent of the decedent's employer (and workers' compensation defendant).

Appeal by respondents from order entered 31 October 2006 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 10 October 2007.

*Davis & Hamrick, L.L.P., by James G. Welsh, Jr., and H. Lee Davis, Jr., for petitioner appellees.*

*Ogletree Deakins Nash Smoak & Stewart, P.C., by Brian M. Freedman, and Sarah H. Roane, for respondent appellants.*

## IN RE ESTATE OF BULLOCK

[188 N.C. App. 518 (2008)]

McCULLOUGH, Judge.

On 16 September 2004, Christopher Bullock ("Bullock"), an employee of C.C. Mangum Company ("C.C. Mangum"), was working at a construction site in Raleigh. Kenneth B. Parker ("Parker), an employee of Puryear Transport, Inc. ("Puryear"), was delivering pavers to the site, driving a dump truck owned by Puryear. Bullock signaled to Parker to move his truck to the paving location and began to move barrels out of Parker's way, leaving Parker's line of sight. While backing up to the paving location, Parker inadvertently backed the dump truck over Bullock. Bullock died as a result of injuries sustained in that accident. At the time of the accident, C.C. Mangum was insured by American Zurich Insurance Company ("American Zurich Insurance"). Puryear was insured by Converium Insurance Company ("Converium Insurance").

Bullock was never married and had no biological children. At the time of his death, Bullock resided with his long-time girlfriend, Katherine Davis ("Davis"), and two minors, Michael Rashad Davis and Justin Tyler Davis, who were Katherine Davis's nephews ("minor nephews"). Davis had been living with Bullock since 1984, and her two minor nephews had been living with and were fully supported by the couple since 1997. Bullock did not, however, legally adopt either of the minor nephews. Bullock died intestate, and his only heir at law pursuant to N.C. Gen. Stat. § 29-15 (2005), was his mother, Melissa Hayward. Davis was named as personal representative of Bullock's estate.

After Bullock's death, Bullock's family retained attorney Geoffrey H. Simmons ("Simmons") to bring a wrongful death claim against Parker and Puryear as well as a workers' compensation claim against C.C. Mangum and American Zurich Insurance.

In October of 2004, Simmons notified Puryear's insurance carrier, Converium Insurance, that he represented Bullock's estate in "all matters" arising from Bullock's death. Converium Insurance, through its Third-Party Administrator, National Claims Management, and its adjustor, Allison Laird, began negotiating with Simmons regarding the wrongful death claim. In January 2005, Simmons notified Allison Laird that there was a pending workers' compensation claim against respondents; that he anticipated that it would be resolved by March 2005; and that there would be a dependency hearing as part of this workers' compensation claim. Respondents were not notified of the ongoing negotiations regarding the wrongful death claim.

On 21 April 2005, the North Carolina Industrial Commission issued an Opinion and Award finding that the minor nephews were wholly and fully dependent on Bullock for support and that they were the only persons entitled to receive death benefits under N.C. Gen. Stat. § 97-39 (2005).[1] The Commission awarded death benefits in the amount of $307.16 per week for 400 weeks to each minor nephew, plus burial and medical expenses, an anticipated total amount of $259,587.44.

In May of 2005, without notifying respondents or obtaining their written consent, Simmons settled the wrongful death claim against petitioners for the sum of $95,000.00. On 2 June 2005, counsel for Puryear and Parker delivered the settlement agreement and settlement check to Simmons, which included instructions directing that settlement proceeds were delivered "in trust" and were "not to be negotiated or delivered" to any beneficiaries "until all liens, including . . . worker's compensation, have been fully paid and satisfied or compromised and released." On 3 June 2005, Davis, as personal representative of the estate, and Hayward, as sole beneficiary under the Intestate Succession Act, signed the Settlement Agreement and Release. Simmons disbursed the settlement funds to Hayward pursuant to N.C. Gen. Stat. § 28A-18-2 (2005), which directs that proceeds from wrongful death actions be distributed according to the Intestate Succession Act to a decedent's heirs at law.

Respondents learned of the settlement agreement between Bullock's estate and Parker and Puryear in February 2006. On 17 February 2006, C.C. Mangum's counsel wrote to Laird, seeking reimbursement for the death benefits to be paid to the minor nephews. On 5 June 2006, petitioners filed a motion to approve the settlement and to set aside any existing workers' compensation lien that respondents might have. On 27 August 2006, respondents moved for the court to: (1) deny petitioners' motion; (2) enter a declaratory order finding that respondents do possess a workers' compensation lien on the settlement proceeds received by Hayward; and (3) set aside the settlement agreement.

A hearing was held on 28 August 2006, and by order entered 31 October 2006, the trial court denied respondents' motion to set aside the settlement agreement; respectively, the trial court granted peti-

---

1. The Industrial Commission determined that Davis was not wholly dependent on Bullock for support, as she had been receiving Social Security disability payments and other governmental assistance.

tioners' motion to approve the settlement agreement and concluded that respondents did not have a valid workers' compensation lien on the settlement proceeds, or in the alternative, the court concluded that if respondents did have a valid workers' compensation lien, such lien should be struck.

On appeal, respondents contend that: (1) the trial court erred in concluding that respondents do not have a lien pursuant to N.C. Gen. Stat. § 97-10.2 against the wrongful death benefits recovered by decedent's estate; (2) the trial court abused its discretion by finding, in the alternative, that if such lien did exist, such lien should be struck pursuant to N.C. Gen. Stat. § 97-10.2(j); and (3) the trial court erred in failing to set aside the settlement agreement.

### I. Existence of Lien

**[1]** Respondents first contend that the trial court erred in concluding that respondents do not have a lien against the wrongful death benefits recovered by decedent's estate. We agree.

"Questions of statutory interpretation are questions of law, which are reviewed *de novo* by an appellate court." *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559, 589 S.E.2d 179, 180 (2003). "The cardinal principle of statutory interpretation is to ensure that legislative intent is accomplished." *McLeod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283, 288, 444 S.E.2d 487, 490, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 528 (1994). "To determine legislative intent, we first look to the language of the statute." *Estate of Wells v. Toms*, 129 N.C. App. 413, 415-16, 500 S.E.2d 105, 107 (1998).

N.C. Gen. Stat. §§ 97-10.2(f)(1) and 28A-18-2 both govern the distribution of damages recovered in a wrongful death action. " 'Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each, that is, all applicable laws on the same subject matter should be construed together so as to produce a harmonious body of legislation, if possible.' " *Justice v. Scheidt, Commissioner of Motor Vehicles*, 252 N.C. 361, 363, 113 S.E.2d 709, 711 (1960) (quoting *Blowing Rock v. Gregorie*, 243 N.C. 364, 371, 90 S.E.2d 898, 904 (1956)). Here, the right for decedent's estate to bring an action against Parker and Puryear, third-party tortfeasors, is conferred by N.C. Gen. Stat. § 28A-18-2. However, the relative rights between decedent's estate and respondents are governed by N.C. Gen. Stat. § 97-10.2.

N.C. Gen. Stat. § 28A-18-2 authorizes the personal representative of an estate to bring a wrongful death action on behalf of a decedent and governs the distribution of the damages recovered from such action. Section 28A-18-2(a) (2005) provides in pertinent part:

> (a) ·. . . **The amount recovered** [in a wrongful death action against a third-party tortfeasor] . . . **is not liable to be applied** as assets, **in the payment of debts** or legacies, . . . **but shall be disposed of as provided in the Intestate Succession Act**.

Section 97-10.2 of the Workers' Compensation Act defines the rights and remedies of employees and employers against third-party tortfeasors. *Radzisz v. Harley Davidson of Metrolina*, 346 N.C. 84, 87, 484 S.E.2d 566, 568 (1997). Section 97-10.2 was designed to secure prompt, reasonable compensation for an employee and to simultaneously permit an employer who has settled with the employee to recover such amount from a third-party tortfeasor. *Brown v. R.R.*, 204 N.C. 668, 671, 169 S.E. 419, 420 (1933). Our Supreme Court has held that the purpose of the North Carolina Workers' Compensation Act is not only to provide a swift and certain remedy to an injured worker, but is also to ensure a limited and determinate liability for employers. *Barnhardt v. Cab Co.*, 266 N.C. 419, 427, 146 S.E.2d 479, 484 (1966). The legislative intent behind the Workers' Compensation Act is not to provide an employee with a windfall of a recovery from both the employer and the third-party tortfeasor. *Radzisz*, 346 N.C. at 89, 484 S.E.2d at 569. Likewise, "[the Workers' Compensation Act] does not create two causes of action. . . . The right to bring [an] action for damages for wrongful death is conferred by General Statutes [now § 28A-18-2]. The [Workers' Compensation Act] merely governs the respective rights of the employee's estate, the employer and the insurance carrier to maintain an action for damages against third parties." *Groce v. Rapidair, Inc.*, 305 F. Supp. 1238, 1241 (1969).

N.C. Gen. Stat. § 97-10.2 provides in pertinent part:

> (a) The right to compensation and other benefits under this Article for disability, disfigurement, **or death** shall not be affected by the fact that the injury or death was caused under circumstances creating a liability in some person other than the employer to pay damages therefor, such person hereinafter being referred to as the "third party." **The respective rights and interests of the employee-beneficiary** under this Article, **the employer, and the employer's insurance carrier,** if any, **in respect of the common-law cause of action against such**

**third party** and the damages recovered **shall be as set forth in this section**.

\* \* \* \*

> (f)(1) . . . if an award final in nature in favor of the employee has been entered by the Industrial Commission, then **any amount obtained by any person** by settlement with, judgment against, or otherwise **from the third party by reason of such injury or death shall be disbursed** by order of the Industrial Commission for the following purposes and in the following order of priority:
>
> \* \* \* \*
>
> c. Third to the **reimbursement of the employer** for all benefits by way of compensation or medical compensation expense paid or to be paid by the employer under award of the Industrial Commission.
>
> \* \* \* \*

(h) In any . . . settlement with the third party, every party to the claim for compensation **shall have a lien to the extent of his interest under (f)** hereof upon **any payment made by the third party** by reason of such injury . . . and such lien may be enforced against **any person** receiving such funds.

*Id.* (emphasis added).

Here, the trial court reasoned that because the lien created by § 97-10.2(h) is a subrogation lien, applying general principles of subrogation, respondents are only entitled to step into the shoes of the minor nephews, the beneficiaries of the workers' compensation award, and may only enforce such lien against proceeds to which the minor nephews are entitled. Because the minor nephews are not heirs at law under the Intestate Succession Act and are not entitled to wrongful death proceeds pursuant to N.C. Gen. Stat. § 28A-18-2, the trial court concluded that respondents, likewise, do not have an enforceable lien against such proceeds. We disagree, as it is improper to abrogate an employer's right of reimbursement by creating limits to recovery that the General Assembly has not expressed, implied, or intended. *Radzisz*, 346 N.C. at 89-91, 484 S.E.2d at 568-69.

Before we begin the analysis of § 97-10.2, we note that we have already held that the language of § 28A-18-2(a), which prohibits recoveries from a wrongful death action from being applied to debts of the decedent, is not a bar to an employer's recovery of compensation paid; this is because we have held that the right of reimbursement created by § 97-10.2(f)(1) is not a debt of the decedent, but rather, is a statutory right. *Byers v. Highway Commission*, 3 N.C. App. 139, 147, 164 S.E.2d 535, 541 (1968), *aff'd*, 275 N.C. 229, 166 S.E.2d 649 (1969) (interpreting former N.C. Gen. Stat. § 28-173, which has been recodified as § 28A-18-2). Likewise, our Supreme Court has stated,

> (I)t is **mandatory** under the provisions of the Workmen's Compensation Act that **any recovery against a third party by reason** of an injury to or **death of an employee subject to the Act**, the proceeds received from such settlement with or judgment against the third party, **shall be disbursed according to the provisions of the Workmen's Compensation Act**.

*Cox v. Transportation Co.*, 259 N.C. 38, 43, 129 S.E.2d 589, 592-93 (1963) (emphasis added).

According to the plain language of § 97-10.2(f) and (h), when read *in pari materia*, respondents have a statutory lien against *any* payment made by a third-party tortfeasor arising out of an injury or death of an employee subject to the Act. This lien may be enforced against "*any* person receiving such funds." N.C. Gen. Stat. § 97-10.2(h) (emphasis added). It is a lien for "all amounts paid or to be paid" to the employee, and it is mandatory in nature. *Radzisz*, 346 N.C. at 90, 484 S.E.2d at 569.

Although the General Assembly expressly subrogated the rights of an employer's insurance carrier to that of an employer, *see* N.C. Gen. Stat. § 97-10.2(g), we find no language in section 97-10.2 subrograting the rights of an employer to that of the beneficiaries of the workers' compensation award. If the General Assembly intended to subrogate the employer's rights to that of the beneficiaries of the award, they would have done so expressly as they did in subsection (g). Instead, the extent of an employer's subrogation interest under subsection (f) is measured by compensation paid or to be paid by the employer.

Here, respondents have a statutory workers' compensation lien upon any payment made by third-party tortfeasors, Parker and

**IN RE ESTATE OF BULLOCK**

[188 N.C. App. 518 (2008)]

Puryear, arising out of Bullock's death. This lien may be enforced against any person receiving third-party settlement proceeds, which includes Bullock's mother, Melissa Hayward, who will be paid from the $95,000.00 settlement. Respondents' lien is for all amounts paid or to be paid to or on behalf of the minor nephews, which is $259,587.44. It was improper for the trial court to conclude that respondents' rights were subrogated to those of the minor nephews where the General Assembly has not expressed, implied, or intended any such limit. This conclusion, which allows for two recoveries, one by the employee through his dependents and another by the employee through his estate, contravenes both the plain language of § 97-10.2(f) as well as the compensatory rather than punitive intent of the Act.

II. Lien Reduction pursuant to N.C. Gen. Stat. § 97-10.2(j)

[2] Respondents next contend that the trial court abused its discretion by finding, in the alternative, that if respondents did have a lien against the settlement proceeds under § 97-10.2(h), such lien should be struck pursuant to § 97-10.2(j). Because we find that the trial court made insufficient findings to provide for meaningful appellate review, we remand.

Pursuant to N.C. Gen. Stat. § 97-10.2(j), once a settlement between an employee and a third-party tortfeasor "has been finalized so that only performance of the agreement is necessary to bind the parties," either party may petition a superior court to determine the subrogation amount.[2] *Ales v. T. A. Loving Co.*, 163 N.C. App. 350, 353, 593 S.E.2d 453, 455 (2004). A trial judge has discretion under this provision to adjust the amount of a workers' compensation lien, even if the result is a double recovery for the plaintiff. *Holden v. Boone*, 153 N.C. App. 254, 257, 569 S.E.2d 711, 713 (2002). However, "the discretion granted [to the Superior Court judge] under G.S. § 97-10.2(j) is

---

2. Respondents argue that according to our decision in *Ales,* in order for a trial court to have jurisdiction to determine the subrogation amount under subsection (j), the parties must petition the court *after* the settlement is reached, but *before* the settlement proceeds have been distributed. We find that respondents have misconstrued our holding in *Ales.* Although it is true that we have interpreted subsection (j) to require that a party must first reach a final settlement agreement before the trial court has jurisdiction to determine the subrogation amount, we have not interpreted subsection (j) to require that the parties must petition the court *before* the settlement proceeds have been distributed. We find no such requirement in the language of subsection (j); however, we note that in determining the appropriate amount of the workers' compensation lien, the trial court does have discretion under (j) to consider any factors that it deems "just and reasonable," which could include the timeliness of the petition and whether settlement proceeds have been distributed.

not unlimited; 'the trial court is to make a reasoned choice, a judicial value judgment, which is factually supported . . . by findings of fact and conclusions of law sufficient to provide for meaningful appellate review.' " *In re Biddix*, 138 N.C. App. 500, 504, 530 S.E.2d 70, 72 (2000), *disc. review denied*, 352 N.C. 674, 545 S.E.2d 418 (2000) (quoting *Allen v. Rupard*, 100 N.C. App. 490, 495, 397 S.E.2d 330, 333 (1990)). N.C. Gen. Stat. § 97-10.2(j) provides, in pertinent part:

> [T]he judge **shall** determine, in his discretion, the amount, if any, of the employer's lien, whether based on accrued or prospective workers' compensation benefits, **and** the amount of cost of the third-party litigation to be shared between the employee and employer. The judge **shall** consider [1] the anticipated amount of prospective compensation the employer or workers' compensation carrier is likely to pay to the employee in the future, [2] the net recovery to plaintiff, [3] the likelihood of the plaintiff prevailing at trial or on appeal, [4] the need for finality in the litigation, **and** [5] any other factors the court deems just and reasonable[.]

N.C. Gen. Stat. § 97-10.2(j) (emphasis added).

Although we have held that there is no mathematical formula or set list of factors for the trial court to consider in making its determination, *Biddix*, 138 N.C. App. at 502, 530 S.E.2d at 72, it is clear from the use of the words "shall" and "and" in subsection (j), that the trial court must, at a minimum, consider the factors that are expressly listed in the statute. Otherwise, such words are rendered meaningless.

Here, the court made no findings nor is there any indication in the record to show that it considered the following mandated statutory factors: (1) the cost of litigation to be shared between Bullock's estate and respondents, if any; (2) the net recovery to Melissa Hayward, which would require a determination of the amount necessary to adequately compensate her, given that the court found that she was not dependent on Bullock for support nor did she have much contact with him while he was alive, and the amount of attorney's fees and other expenses to be paid from the settlement proceeds; (3) the likelihood of Bullock's estate prevailing at trial or on appeal; and (4) the need for finality in the litigation. The trial court made only the following findings to support its decision to strike respondents' lien: (1) that Melissa Hayward is Bullock's sole surviving heir at law; (2) that Melissa Hayward had little contact with Bullock; (3) that liability for Bullock's death was contested; (4) that the settlement was in the

amount of $95,000.00; and (5) that the prospective workers' compensation benefits totaled $259,567.44, which exceeds the total settlement proceeds. Based upon these findings, we are unable to determine whether the court properly exercised its discretion or if it acted under a misapprehension of law in striking respondents' statutory right to reimbursement from settlement proceeds recovered from Parker and Puryear. Accordingly, we remand for additional findings.

### III. Validity of Settlement

[3] Finally, respondents contend that because petitioners settled their third-party claim without the written consent of C.C. Mangum, the trial court erred by refusing to set aside the settlement agreement pursuant to § 97-10.2(h). Even without the written consent of the employer, however, pursuant to § 97-10.2(h)(2), the settlement agreement need not be set aside if either party complies with § 97-10.2(j). Because we remand for additional findings to determine whether the workers' compensation lien was properly reduced to zero under § 97-10.2(j), we need not address this argument at this time.

Accordingly, this order is reversed in part and remanded for additional findings of fact.

Reversed in part, remanded for additional findings.

Judges CALABRIA and STEPHENS concur.