IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-219

No. COA21-335

Filed 5 April 2022

North Carolina Industrial Commission, I.C. No. Y18900

GWENDOLYN DIANETTE WALKER, Widow of ROBERT LEE WALKER, Deceased Employee, Plaintiff,

v.

K&W CAFETERIAS, Employer, LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants.

Appeal by plaintiff, and cross-appeal by defendants, from amended opinion and award entered 15 April 2021 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 December 2021.

*The Sumwalt Group, by Vernon Sumwalt and Christa Sumwalt, for plaintiff-appellant/cross-appellee.*

*Cranfill Sumner LLP, by Steven A. Bader and Roy G. Pettigrew, for defendants-appellees/cross-appellants.*

ZACHARY, Judge.

¶ 1 Plaintiff Gwendolyn Dianette Walker appeals, and Defendants K&W Cafeterias and Liberty Mutual Insurance Company cross-appeal, from the Amended Opinion and Award of the Full North Carolina Industrial Commission (the "Commission") ordering that Plaintiff's counsel (1) disburse $900,000.00 in commercial uninsured/underinsured motorist ("UIM") proceeds and $12,500.00 in

personal UIM proceeds free and clear of Defendants' subrogation lien pursuant to N.C. Gen. Stat. § 97-10.2 (2021), and (2) disburse $50,000.00 in liability insurance policy proceeds according to the following distribution:

- $5,921.91 to Plaintiff's counsel for costs and expenses incurred in the litigation of the Third-Party Action,

- $16,666.67 to Plaintiff's counsel for attorneys' fees in the Third-Party Action, and

- $27,411.42 to Defendants towards Defendants' subrogation lien.

After careful review, we affirm the Commission's Opinion and Award in part, and we reverse in part and remand to the Commission with instructions to modify its order regarding the distribution of the proceeds.

## *Background*

The full background of this case is set forth in our Supreme Court's opinion in *Walker v. K&W Cafeterias* (*Walker I*), 375 N.C. 254, 846 S.E.2d 679 (2020). We recite here the facts relevant to the appeals currently before us.

On 16 May 2012, Robert Lee Walker ("Decedent") was driving a vehicle owned by his employer, Defendant K&W Cafeterias, when he was involved in a fatal motor vehicle accident in Dillon, South Carolina. *Walker I*, 375 N.C. at 255, 846 S.E.2d at 680. As our Supreme Court recognized in *Walker I*, however:

> this case is not [P]laintiff's workers' compensation claim.
> That claim was fully resolved in 2013 when death benefits

> were paid to [P]laintiff under the Workers' Compensation Act due to [Decedent]'s work-related death. Instead, here we review what should happen to over $900,000 that was paid to [P]laintiff in the South Carolina wrongful death settlement with the at-fault driver. That settlement was reached in 2016, and to date, the money remains in the trust account of [P]laintiff's attorneys.

*Id.* at 258, 846 S.E.2d at 682.

¶ 4 On 21 August 2012, Plaintiff filed a worker's compensation claim for death benefits pursuant to N.C. Gen. Stat. §§ 97-38 to -40. *Id.* at 256, 846 S.E.2d at 681. On 7 January 2013, a deputy commissioner entered a Consent Opinion and Award ordering Defendants to pay $333,763.00 in workers' compensation death benefits to Plaintiff. *Id.*

¶ 5 In 2014, Plaintiff filed a wrongful death action in South Carolina (the "Third-Party Action"), seeking damages from the third-party driver at fault in the accident that resulted in Decedent's death. *Id.* "In 2016, [P]laintiff and the third-party [driver] reached a settlement agreement, according to which [P]laintiff recovered a total of $962,500[,]" composed of "(1) $50,000 in liability benefits from the [at-fault driver]'s insurer; (2) $12,500 in personal UIM proceeds from [P]laintiff's and [D]ecedent's own personal UIM policy; and (3) $900,000 in UIM proceeds from a commercial UIM policy that K&W purchased with its automobile insurance carrier." *Id.*

¶ 6 On 21 March 2016, Defendant Liberty Mutual asserted a subrogation claim; it "filed a request for a hearing with the North Carolina Industrial Commission in which

it sought repayment of the workers' compensation death benefits it had paid to [P]laintiff beginning in 2013, claiming a lien under N.C.G.S. § 97-10.2 on the UIM proceeds that [Plaintiff] recovered from the South Carolina wrongful death settlement in 2016." *Id.* at 256–57, 846 S.E.2d at 681.

¶ 7        On 10 July 2017, a deputy commissioner concluded that Defendants "were entitled to subrogation under N.C.G.S. § 97-10.2(f)(1)(c), (h), and ordered that [D]efendants be reimbursed out of the third-party recovery [from the settlement in the Third-Party Action] for the $333,763 in workers' compensation benefits that they had paid to [Plaintiff] under the 7 January 2013 Consent Opinion and Award." *Id.* at 257, 846 S.E.2d at 681. Both the Commission and this Court affirmed the 10 July 2017 Opinion and Award. *Id.* Our Supreme Court, however, "conclude[d] that [D]efendants may not satisfy their workers' compensation lien by collecting from [P]laintiff's recovery of UIM proceeds in her South Carolina wrongful death settlement[,]" and reversed and remanded the case. *Id.* at 257–58, 846 S.E.2d at 682.

¶ 8        On remand following *Walker I*, the Commission entered an Amended Opinion and Award on 15 April 2021. The Commission concluded that, pursuant to *Walker I*, the "proceeds recovered in the third-party action from the two UIM policies are governed by South Carolina law and may not be used to satisfy Defendants' workers' compensation lien under N.C. Gen. Stat. § 97-10.2." The Commission further concluded that "Defendants' lien attaches to the entire $50,000.00 in liability

insurance proceeds and not just Plaintiff's share of those proceeds" pursuant to this Court's opinion in *In re Estate of Bullock*, 188 N.C. App. 518, 655 S.E.2d 869 (2008).

¶ 9     The Commission then ordered that Plaintiff's counsel disburse both the $900,000.00 in commercial UIM proceeds and $12,500.00 in personal UIM proceeds "free and clear of Defendants' subrogation interests under N.C. Gen. Stat. § 97-10.2[,]" and further ordered that:

> Plaintiff's counsel shall disburse the $50,000.00 in liability policy proceeds as follows:
>
> > a. $5,921.91 to Plaintiff's counsel for costs and expenses incurred in the litigation of the [Third-Party Action],
> >
> > b. $16,666.67 to Plaintiff's counsel [for] attorney's fees in the [Third-Party Action],
> >
> > c. $27,411.42 to Defendants towards Defendants' subrogation lien.

¶ 10     On 15 April 2021, Plaintiff filed her notice of appeal. On 11 May 2021, Defendants filed their notice of appeal.

### *Standard of Review*

¶ 11     "The standard of review in workers' compensation cases has been firmly established by the General Assembly and by numerous decisions of" our Supreme Court. *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008), *reh'g denied*, 363 N.C. 260, 676 S.E.2d 472 (2009).

Under the Workers' Compensation Act, the Commission is

the sole judge of the credibility of the witnesses and the weight to be given their testimony. Therefore, on appeal from an award of the Industrial Commission, review is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law.

*Id.* (citations and internal quotation marks omitted). The Commission's conclusions of law, however, are reviewed de novo. *Walker I*, 375 N.C. at 258, 846 S.E.2d at 682.

### *Plaintiff's Appeal*

¶ 12 On appeal, Plaintiff argues that the Commission erred by imposing a workers' compensation lien against that portion of a wrongful death recovery that would have been distributed to heirs who did not receive any part of the workers' compensation award for the Decedent's death. Our Supreme Court declined to reach this issue in *Walker I. Id.* at 255 n.1, 846 S.E.2d at 680 n.1. In the present appeal, we are bound by controlling precedent to reject Plaintiff's argument.

¶ 13 Plaintiff concedes that this Court has already decided this issue in *Bullock*, in which this Court analyzed the plain language of N.C. Gen. Stat. § 97-10.2(f) and (h) and concluded that an employer and its insurer

> have a statutory lien against *any* payment made by a third-party tortfeasor arising out of an injury or death of an employee subject to the [Workers' Compensation] Act. This lien may be enforced against *any* person receiving such funds. It is a lien for all amounts paid or to be paid to the employee, and it is mandatory in nature.

188 N.C. App. at 524, 655 S.E.2d at 873 (citations and internal quotation marks

omitted).

¶ 14    Further, we found "no language in [the Workers' Compensation Act] subrogating the rights of an employer to that of the beneficiaries of the workers' compensation award." *Id.* Accordingly, we determined that "[i]t was improper for the trial court to conclude that [the] respondents' rights were subrogated to those of the minor nephews where the General Assembly has not expressed, implied, or intended any such limit." *Id.* at 525, 655 S.E.2d at 873.

¶ 15    "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Indeed, Plaintiff acknowledges that her arguments in favor of overturning *Bullock* are properly addressed to our Supreme Court and that "the current appeal is her next step" toward that goal. Thus, Plaintiff's argument is overruled.

### *Defendants' Cross-Appeal*

¶ 16    On cross-appeal, Defendants argue that the Commission erred (1) by concluding that the proceeds recovered from the personal UIM policy were exempt from subrogation pursuant to N.C. Gen. Stat. § 97-10.2, and (2) by failing to distribute the costs and attorneys' fees *pro rata* pursuant to N.C. Gen. Stat. § 97-10.2(f)(2).

**A.  Subrogation of Personal UIM Policy Proceeds**

¶ 17 Defendants first argue that the Commission's Amended Opinion and Award "is in conflict with" our Supreme Court's opinion in *Walker I* because the Commission determined that the personal UIM policy proceeds were exempt from subrogation. We agree.

¶ 18 "Under N.C. Gen. Stat. § 97-10.2, a subrogation lien for the benefit of the workers' compensation carrier automatically attaches to the third[-]party proceeds received by a plaintiff for whom the carrier has paid medical expenses arising from the injury by accident." *Anglin v. Dunbar Armored, Inc.*, 226 N.C. App. 203, 206, 742 S.E.2d 205, 207 (2013). Section 97-10.2(f)(1) provides that

> [i]f the employer has filed a written admission of liability for benefits under this Chapter with, or if an award final in nature in favor of the employee has been entered by the Industrial Commission, then any amount obtained by any person by settlement with, judgment against, or otherwise from the third party by reason of such injury or death shall be disbursed by order of the Industrial Commission . . . .

N.C. Gen. Stat. § 97-10.2(f)(1).

¶ 19 In *Walker I*, our Supreme Court was presented with the issue of "whether to apply North Carolina or South Carolina law to the attempted subrogation of [P]laintiff's wrongful death settlement UIM proceeds." 375 N.C. at 258, 846 S.E.2d at 682. The applicable choice of law was crucial to determining the outcome of the subrogation issue, because "[u]nder South Carolina UIM law, an insurer is barred, without exception, from seeking to be reimbursed with UIM proceeds for benefits it

has previously paid." *Id.*

¶ 20        Choice-of-law issues arising in North Carolina proceedings concerning injuries suffered in South Carolina have come before this Court on numerous occasions. In such cases, under well-settled conflict-of-laws principles, "the tort law of South Carolina governs the substantive issues of liability and damages, while procedural rights are determined by the laws of North Carolina." *Robinson v. Leach*, 133 N.C. App. 436, 438, 514 S.E.2d 567, 568, *disc. review denied*, 350 N.C. 835, 539 S.E.2d 293 (1999).

¶ 21        Of particular relevance here, this Court has previously addressed the issue of "what law applies to [a] trial court's authority to adjust [a] North Carolina lien on [a] plaintiff's UIM funds, despite their origin" from a South Carolina insurance policy. *Anglin*, 226 N.C. App. at 206, 742 S.E.2d at 207. In *Anglin*, the plaintiff sought the "reduction or elimination of [a workers' compensation] subrogation lien pursuant to N.C. Gen. Stat. § 97-10.2(j)" on South Carolina UIM funds. *Id.* at 209, 742 S.E.2d at 209. In that "N.C. Gen. Stat. § 97-10.2(j) is remedial in nature and remedial rights are determined by the law of the forum," we concluded that "the trial court did not err in applying N.C. Gen. Stat. § 97-10.2(j) to [the] plaintiff's UIM funds received under a South Carolina insurance policy[,]" thus allowing the subrogation lien to be asserted against the UIM proceeds. *Id.* at 209–10, 742 S.E.2d at 209 (citation and internal quotation marks omitted).

¶ 22   In *Walker I*, Defendants relied on these choice-of-law precedents to argue that they were entitled to satisfy their subrogation lien against the commercial UIM proceeds pursuant to N.C. Gen. Stat. § 97-10.2 because "the commercial UIM policy purchased by K&W is not a South Carolina UIM policy. Specifically, they point[ed] out that the parties stipulated before the Commission that the commercial UIM policy was purchased and entered into in North Carolina." 375 N.C. at 259, 846 S.E.2d at 683.

¶ 23   However, rather than viewing this as "an abstract choice of law issue[,]" our Supreme Court concluded that this issue was "properly analyzed under contract law interpreting a choice-of-law clause." *Id.* at 259, 846 S.E.2d at 682. Crucial to our Supreme Court's consideration of this issue in *Walker I* was "the effect of the endorsement that was added to the commercial UIM policy on 7 July 2011 . . . . The clear intent and effect of this endorsement was to provide for the application of South Carolina law to all UIM payments under the policy." *Id.* at 260, 846 S.E.2d at 683. Our Supreme Court then reasoned that:

> [T]he vehicle operated by [D]ecedent at the time of the accident fell within the categories of vehicles for which the policy endorsement intended to apply South Carolina law. The endorsement modified the insurance policy for "a covered 'auto' licensed or principally garaged in" South Carolina. As found by the Commission in the 10 July 2017 Opinion and Award, the vehicle [D]ecedent was driving at the time of the accident was registered, garaged, and driven in South Carolina. These factors, and the fact that

the policy endorsement explicitly provided as a matter of contract that South Carolina UIM law would apply to payments made under the commercial UIM policy, demonstrate that South Carolina law should apply here. Accordingly, we hold that the endorsement requires South Carolina UIM law to apply here.

*Id.*

¶ 24    "[H]aving concluded that South Carolina law applie[d] to proceeds paid under Liberty Mutual's UIM insurance policy," our Supreme Court held that "[D]efendants' subrogation lien under N.C.G.S. § 97-10.2 cannot be satisfied by the UIM proceeds that [P]laintiff received as part of the wrongful death settlement." *Id.* at 261, 846 S.E.2d at 683–84. Our Supreme Court thus reversed and remanded to the Commission for further proceedings. *Id.* at 261, 846 S.E.2d at 684.

¶ 25    On remand, in its Amended Opinion and Award, the Commission concluded that, pursuant to *Walker I*, "proceeds recovered in the third-party action from the two UIM policies are governed by South Carolina law and may not be used to satisfy Defendants' workers' compensation lien under N.C. Gen. Stat. § 97-10.2. *See* S.C. Code § 38-77-160 (2015)." However, Defendants correctly note that our Supreme Court did not indicate whether "its reasoning applied to both the personal UIM policy and the commercial UIM policy." Because *Walker I* relied on the commercial UIM policy as "a contract to which [D]efendants are party[,]" 375 N.C. at 258, 846 S.E.2d at 682, in deciding to analyze the issue at bar as one of contract interpretation,

Defendants argue in the present appeal that "the Supreme Court's analysis, on its face, does not extend to the personal UIM policy[.]" Further, Defendants also suggest that "the factors cited by the Supreme Court to support its outcome – the conformity endorsement and the contractual relationship between Defendants and the UIM carrier – do not extend to the personal UIM policy."

Defendants' argument is persuasive; the contractual analysis undertaken by our Supreme Court in *Walker I* is inapplicable to the instant case. We thus return to the choice-of-law principles articulated in *Anglin*.

It is well established that subrogation pursuant to N.C. Gen. Stat. § 97-10.2 "is remedial in nature and that remedial rights are determined by the law of the forum." *Anglin*, 226 N.C. App. at 207, 742 S.E.2d at 208 (citation and internal quotation marks omitted). As in *Anglin*, the forum in this case is North Carolina. *See id.* at 209, 742 S.E.2d at 209. Accordingly, § 97-10.2 applies to the $12,500.00 in proceeds from the personal UIM policy, and the Commission erred by concluding otherwise.

Having so determined, and with Defendants' subrogation interest in the $12,500.00 in personal UIM proceeds in mind, we next review the Commission's distribution of costs and attorneys' fees.

**B. Distribution of Costs and Attorneys' Fees**

Defendants next contend that the Commission erred in its distribution award.

The Commission ordered that Plaintiff's counsel disburse the $900,000.00 in

commercial UIM proceeds and the $12,500.00 in personal UIM proceeds "free and clear of Defendants' subrogation interests under N.C. Gen. Stat. § 97-10.2." With regard to the liability policy proceeds, the Commission ordered that Plaintiff's counsel disburse the $50,000.00 in liability policy proceeds according to the following distribution:

- $5,921.91 to Plaintiff's counsel for costs and expenses incurred in the litigation of the Third-Party Action,

- $16,666.67 to Plaintiff's counsel for attorneys' fees in the Third-Party Action, and

- $27,411.42 to Defendants towards Defendants' subrogation lien.

¶ 31 In addition to the erroneous exclusion of the $12,500.00 in personal UIM proceeds from Defendants' subrogation interest, Defendants argue that the Commission's distribution contravenes the purpose of the Workers' Compensation Act by inequitably ordering the disbursement of costs and expenses from the $50,000.00 in liability policy proceeds rather than against Plaintiff's total $962,500.00 recovery, when "most of these costs did not go toward the fraction of the recovery that is subject to the lien." We disagree.

¶ 32 The Workers' Compensation Act specifically addresses the payment of costs and attorneys' fees from a third-party recovery:

[A]ny amount obtained by any person by settlement with,

judgment against, or otherwise from the third party by reason of such injury or death shall be disbursed by order of the Industrial Commission for the following purposes and in the following order of priority:

> a. First to the payment of actual court costs taxed by judgment and/or reasonable expenses incurred by the employee in the litigation of the third-party claim.
>
> b. Second to the payment of the fee of the attorney representing the person making settlement or obtaining judgment, and except for the fee on the subrogation interest of the employer such fee shall not be subject to the provisions of G.S. 97-90 but shall not exceed one third of the amount obtained or recovered of the third party.
>
> c. Third to the reimbursement of the employer for all benefits by way of compensation or medical compensation expense paid or to be paid by the employer under award of the Industrial Commission.
>
> d. Fourth to the payment of any amount remaining to the employee or his personal representative.

N.C. Gen. Stat. § 97-10.2(f)(1).

¶ 33 As regards attorneys' fees, § 97-10.2(f)(2) provides that "[t]he attorney fee paid under (f)(1) shall be paid by the employee and the employer in direct proportion to the amount each shall receive under (f)(1)c and (f)(1)d hereof and shall be deducted from such payments when distribution is made." *Id.* § 97-10.2(f)(2).

¶ 34 Defendants assert that § 97-10.2(f)(1)'s "distribution scheme breaks down" following *Walker I* because "[b]y statute, the lien attaches to 'any amount obtained by

any person.' But here, the vast majority of the third-party recovery *cannot* be used to satisfy Defendants' lien." Instead, Defendants propose that the equitable approach would be "to employ a pro rata distribution of the costs and attorneys' fees that accounts for the disparity between the total recovery and the amount subject to the lien."

¶ 35        Regarding costs, the Commission noted that "[t]he parties stipulated that Plaintiff's attorneys incurred a total of $5,921.91 in actual costs and reasonable expenses in pursuing her claim against the Third Parties." *Walker I* makes clear that under South Carolina law, $900,000.00 of the $962,500.00 recovery is not subject to Defendants' subrogation lien, leaving $62,500.00 to distribute pursuant to § 97-10.2(f)(1). *See Walker I*, 375 N.C. at 261, 846 S.E.2d at 683–84. Section 97-10.2(f)(1)a gives the reimbursement of the "actual court costs taxed by judgment and/or reasonable expenses incurred by the employee in the litigation of the third-party claim" priority over a subrogation lien. N.C. Gen. Stat. § 97-10.2(f)(1)a. As the parties stipulated, the costs and expenses were incurred in the litigation of the liability claim. Accordingly, the sum of $5,921.91 should be disbursed from the $50,000.00 in proceeds of the personal liability policy.

¶ 36        Continuing with the distribution scheme laid out by § 97-10.2(f), we next address the disbursement of attorneys' fees. Here, the Commission found that "[u]nder the provisions of the attorney's fee agreements stipulated into the record

herein and N.C. Gen. Stat. § 97-10.2(f)(1)b, Plaintiff's attorneys are entitled to a fee of one[-]third, or 33 1/3 percent, of any sum recovered from the liability policy proceeds, which amounts to $16,666.67." However, the Commission did not address the disbursement of attorneys' fees from the $12,500.00 in personal UIM policy proceeds.

¶ 37    Section 97-10.2(f)(2) requires that the parties shall pay attorneys' fees "in direct proportion to the amount each shall receive under (f)(1)c and (f)(1)d hereof[.]" *Id.* § 97-10.2(f)(2). As the Commission correctly concluded:

> The proportion of the amount Defendants were disbursed under N.C. Gen. Stat. § 97-10.2(f)(1)c ($[41,282.13]) to the amount Plaintiff was disbursed under N.C. Gen. Stat. § 97-10.2(f)(1)d ($0) is 100% to 0%. Defendants are therefore responsible for paying 100% of the $[20,833.33] attorney's fee pursuant to N.C. Gen. Stat. § 97-10.2(f)(2).

¶ 38    "Where a statute's language is clear and unambiguous, we are not at liberty to divine a different meaning through other methods of judicial construction. This Court must apply the law as enacted by the legislature." *Stahl v. Bowden*, 274 N.C. App. 26, 31, 850 S.E.2d 588, 592 (2020) (citation and internal quotation marks omitted). The language of § 97-10.2(f)(2) is "clear and unambiguous," and with the exception of the particular amounts in error due to the Commission's exclusion of the personal UIM proceeds from its calculation, the Commission correctly applied the statutory scheme in determining the proper distribution of the proceeds.

¶ 39    Accordingly, the sum of $5,921.91 shall be disbursed in reimbursement of the costs and reasonable expenses from the $50,000.00 in liability insurance policy proceeds. The sum of $16,666.67 in attorneys' fees shall be disbursed from the $50,000.00 in liability insurance policy proceeds, and the sum of $4,166.67 in attorneys' fees shall be disbursed from the $12,500.00 in personal UIM policy proceeds, for a total of $20,833.33 in attorneys' fees from these two policy proceeds. The sums remaining from the third-party recovery proceeds ($62,500.00 - $5,921.91 - $20,833.33 = $35,744.76) shall be disbursed to Defendants to satisfy their workers' compensation subrogation lien pursuant to N.C. Gen. Stat. § 97-10.2(f)(1)c.

### *Conclusion*

¶ 40    Plaintiff's argument on appeal that the Commission erred by imposing a workers' compensation lien against that portion of a wrongful death recovery that would have been distributed to heirs who did not receive any part of the workers' compensation award for the Decedent's death is foreclosed by precedent. *See Bullock*, 188 N.C. App. at 524–25, 655 S.E.2d at 873. Thus, that portion of the Commission's Amended Opinion and Award is affirmed.

¶ 41    The Commission erred by concluding that the proceeds of the personal UIM policy are not subject to Defendants' subrogation lien pursuant to *Walker I*. However, the Commission properly ordered that the costs and reasonable expenses be distributed from the proceeds of the liability policy, and that one-third of the proceeds

of each policy be distributed as attorneys' fees. Accordingly, we reverse that portion

of the Amended Opinion and Award and remand to the Commission with instructions

to enter an award distributing the proceeds as follows:

1) Plaintiff's counsel shall disburse the $900,000.00 in commercial UIM proceeds "free and clear of Defendants' subrogation interests under N.C. Gen. Stat. § 97-10.2."

2) Counsel shall disburse the $50,000.00 in third-party liability policy proceeds as follows:

   a. $5,921.91 to Plaintiff's counsel for costs and expenses incurred in the litigation of the Third-Party Action,

   b. $16,666.67 to Plaintiff's counsel for attorneys' fees, and

   c. $27,411.42 to Defendants in satisfaction of Defendants' subrogation lien.

3) Counsel shall disburse the $12,500.00 in Decedent's personal UIM proceeds as follows:

   a. $4,166.67 to Plaintiff's counsel for attorneys' fees, and

   b. $8,333.33 to Defendants in satisfaction of Defendants' subrogation lien.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Judges WOOD and GRIFFIN concur.